# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-01609-SCT

*JAMES C. BURNSIDE*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 7/10/2003
TRIAL JUDGE: HON. MARCUS D. GORDON
COURT FROM WHICH APPEALED: NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: EDMUND J. PHILLIPS, SR.
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: W. GLENN WATTS
DISTRICT ATTORNEY: KEN TURNER
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 09/09/2004
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE COBB, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. James C. Burnside was convicted in the Circuit Court of Neshoba County for simple assault on Deputy Sheriff John Lilly and sentenced to serve a term of 4 1/2 years in the custody of the Mississippi Department of Corrections and fined $1,000. Burnside now appeals that conviction and sentence to this Court. Finding no reversible error, we affirm.

### FACTS

¶2. Deputy Lilly testified that he conducted a driver's license check on July 21, 2002, along with Deputy Halbert Johnson, Trooper Eddie Hunt and Trooper Tony Sherer. A road block was set up at

Highway 498 and County Road 147 in Neshoba County in the Hope Community. Two patrol cars were positioned with their blue warning lights on at the road block.

¶3. As a car approached the road block, the driver slammed on the brakes, squealed the tires, backed up in the road and turned around approximately 100 yards from the road block. Deputy Lilly pursued the car. When pursued, the driver of the car, later identified as Burnside, drove all over the road at a high rate of speed and without a tag. Deputy Lilly had his blue lights flashing and siren running. He radioed to communications to advise of his pursuit.

¶4. Deputy Lilly pursued the car approximately 4 or 5 miles. The car pulled into a residential driveway. Burnside jumped out of the car and started running on foot toward the back of the house. Deputy Lilly observed no one else in the car. Deputy Lilly pursued Burnside on foot into the woods. Deputy Lilly was wearing his uniform and an orange reflective vest that indicated Sheriff on it. Deputy Lilly identified himself and ordered Burnside to get on the ground. Burnside did not obey.

¶5. Deputy Lilly chased Burnside 150 - 200 yards. Burnside stopped to face Deputy Lilly. Deputy Lilly sprayed Burnside with mace. Burnside then moved toward Deputy Lilly, got Deputy Lilly on the ground, and got on top of him. Deputy Lilly testified that he was hit several times by Burnside's fists in his head, neck and shoulder area as he fell to the ground. When Burnside got Deputy Lilly to the ground and got on top of him, he hit Deputy Lilly with the deputy's flashlight, a rechargeable mag light. Deputy Lilly testified that he feared for his life.

¶6. In order to get him off, Deputy Lilly shot Burnside in his chest and in the neck area while Burnside was still on top of him. He hit Deputy Lilly at least one more time after he was shot. When he fell over, Deputy Lilly was able to get out from under him.

¶7. Deputy Johnson finally arrived at the scene. Deputy Johnson testified that he ran toward the gunshots. Deputy Lilly was covered in blood when Deputy Johnson arrived. Deputy Johnson saw a flashlight on the ground at the scene of the struggle identical to the one he had from the Sheriff's Department.

¶8. Deputy Lilly left the woods and met Trooper Hunt at the edge of the woods. Deputy Lilly was transported by Neshoba EMS to the hospital for cuts and scratches to his head and cheekbone. Deputy Lilly had bruises and a visible cut on his forehead. Deputy Johnson remained with Burnside until medical help arrived. Burnside was transported by medical and law enforcement personnel to the hospital.

¶9. At the scene of the physical altercation there were 3 police flashlights of the same make that were intermingled in the process of getting Burnside medical attention and help for Deputy Lilly. The trial court allowed introduction of the flashlight as being "exactly like one [Deputy Lilly] had that night."

¶10. Burnside testified at trial. He admitted that he ran from the road block because he had no driver's license and the car he was driving did not belong to him. Burnside denied striking Deputy Lilly or moving toward Deputy Lilly.

¶11. Burnside now appeals, raising two issues:

    **I.    Whether the trial court committed reversible error in admitting the flashlight.**

    **II.    Whether defense counsel provided ineffective assistance of counsel for failing to request a jury instruction on self defense.**

## LEGAL ANALYSIS

### I.  Admission of Flashlight

¶12. Burnside contends that the trial court's admission of the flashlight into evidence constituted reversible error. We do not agree.

¶13.    During the State's examination of Deputy Lilly the record reflects the following exchange regarding

introduction of the flashlight:

Mr. Duncan:            I want to show you some pictures.  These are marked Exhibits 2 and 3.  What is shown in those photographs?

Deputy Lilly:    That's me with cuts and scratches.

Mr. Duncan:            Where did those cuts and scratches come from?

Deputy Lilly:    From the altercation and in the chase with Mr. Burnside.

Mr. Duncan:            I want to show you what's marked Exhibit No. 4 there.  What is shown in that photograph?

Deputy Lilly:    It's a cut on the top of my head.

Mr. Duncan:            Where did it come from?

Deputy Lilly:    Apparently from the flashlight.

Mr. Duncan:            Your Honor, at this time we would offer these photographs and this flashlight as exhibits.

The Court:            Let them be marked.

Mr. Brooks:            Your Honor, we would object to Exhibit No. 1, the flashlight, for the reason that the witness has not identified that as the flashlight used but as being like the flashlight.

The Court:            I am going to sustain the objection for I don't think he has completely described this flashlight sufficiently to compare to the flashlight that was actually used.

Mr. Duncan:            Can I go ahead and have the photographs marked?

The Court:            Yes.

PHOTOGRAPHS REFERRED TO, BEING OFFERED INTO EVIDENCE, WERE THEN AND THERE IDENTIFIED AND MARKED AS STATE'S EXHIBIT NO. 2, STATE'S EXHIBIT NO. 3, AND STATE'S EXHIBIT NO. 4 AND MADE A PART OF THE RECORD HEREOF.

Mr. Duncan:            Now, Deputy Lilly, I want to show you this flashlight marked Exhibit No. 1.  I believe you had said earlier that was like the flashlight that you had.

Deputy Lilly:    Correct.

Mr. Duncan:            Explain that for us.

Deputy Lilly:    What happened that night, there were several things happened.  There was several flashlights just alike the night this happened.  During all the stuff that happened, going in the woods, Mr. Burnside in the woods, and all this stuff, there was at least three of these flashlights that were just alike that were passed around.  At the time we didn't exactly know which flashlight was which.

Mr. Duncan:            Who did they belong to?

Deputy Lilly:    Deputy Johnson, myself, and I believe the Sheriff had one also.

4

| | |
|---|---|
| Mr. Duncan: | In the confusion, you kind of got the flashlights mixed up? |
| Deputy Lilly: | That is correct |
| Mr. Duncan: | And in the end, did you know which one was yours? |
| Deputy Lilly: | Didn't know which one was which. |
| Mr. Duncan: | Nevertheless, the flashlight you have there, is it exactly like the one you had that night? |
| Deputy Lilly: | That is correct, exactly like it. |
| Mr. Duncan: | Your Honor, at this time, we would offer it. |
| The Court: | Let it be marked. |
| Mr. Brooks: | Same objection. |
| The Court: | Overruled. |

> FLASHLIGHT REFERRED TO, BEING OFFERED INTO EVIDENCE, WAS THEN AND THERE IDENTIFIED AND MARKED AS STATE'S EXHIBIT NO. 1 AND MADE A PART OF THE RECORD HEREOF.

¶14. The State offered the flashlight as being exactly like the flashlight that Deputy Lilly had during the altercation with Burnside. Deputy Lilly testified that his flashlight and 2 other identical flashlights were mixed together and indistinguishable. According to Deputy Lilly's testimony, the flashlight was "exactly like" his flashlight that Burnside hit him with during the altercation. The flashlight was admitted into evidence under that condition.

¶15. M.R.E. 901(a) states that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

¶16. The trial court admitted the flashlight as being exactly like Deputy Lilly's flashlight used in the altercation. The flashlight was not offered as the flashlight actually used. The jury heard Deputy Lilly's testimony that he could not identify the flashlight as the actual flashlight used.

¶17. Furthermore, Burnside was convicted of the simple assault of Deputy Lilly. Clearly, Deputy Lilly's testimony regarding the attack in the woods by Burnside resulting in Deputy Lilly receiving cuts, scratches

5

and bruises is sufficient to support the conviction without the flashlight. Photographs of the deputy's injuries were also admitted into evidence. Therefore, any error would be harmless error.

¶18.    Here the admission of the flashlight was not necessary to establish the charge of simple assault on Deputy Lilly. This Court has held that errors were harmless where "the same result would have been reached had they not existed." **Kolberg v. State**, 829 So.2d 29, 49 (Miss. 2002) (quoting **Lancaster v. State**, 200 So. 721, 722 (Miss. 1941)). In **Kolberg**, this Court further stated that "even where error has occurred, we will not reverse a conviction where the overwhelming weight of the evidence supports the guilty verdict." **Kolberg**, 829 So.2d at 49 (quoting **Lentz v. State**, 604 So.2d 243, 249 (Miss. 1992)). We find this assignment of error to be without merit.

## II.  Ineffective Assistance of Counsel

¶19.    Burnside alleges that his trial counsel offered ineffective assistance of counsel by failing to request a self-defense jury instruction. We disagree as the record does not support an instruction on self-defense.

¶20.    In **Burns v. State**, 813 So.2d 668, 673 (Miss. 2001), this Court reviewed the standard to be followed in reviewing a claim of ineffective assistance of counsel, stating:

> The standard for determining if a defendant received effective assistance of counsel is well settled. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." **Strickland v. Washington**, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case. **Id**. at 687, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." **Stringer v.** State, 454 So.2d 468, 477 (Miss. 1984) (citing **Strickland v. Washington**, 466 U.S. at 687, 104 S.Ct. 2052). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. **Id**.

6

¶21. Here, Burnside testified in his own defense. Burnside testified that he evaded the road block because he did not have a driver's license and was not driving his car. Deputy Lilly testified that he was in uniform and running his blue lights and sirens while pursuing Burnside. Burnside continued to evade Deputy Lilly. Most damning to Burnside's position on appeal is his own testimony that he never hit or struck Deputy Lilly. Burnside also denied ever getting on top of Deputy Lilly. As Burnside denied at trial that he assaulted Deputy Lilly in any way, a jury instruction on self-defense was not supported by the record. Thus, his trial counsel's performance was not deficient.

¶22. Based on the record and Burnside's own testimony, he fails to demonstrate to this Court that he was prejudiced in his defense of the case as required under the second prong of *Strickland*. It is the duty of the appellant to demonstrate both error in failing to receive the instruction and the prejudice to the defense. *See King v. State*, 857 So.2d 702, 719 (Miss. 2003). *See also McGowan v. State*, 706 So.2d 231, 243 (Miss. 1997). This Court has held:

> To determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991).... There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss. 1988).... If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss. 1987).

*Davis v. State*, 743 So.2d 326, 334 (Miss. 1999).

¶23. We find this assignment of error to be without merit.

## CONCLUSION

¶24. We affirm the judgment of the Circuit Court of Neshoba County.

¶25. **CONVICTION OF SIMPLE ASSAULT ON A LAW OFFICER, SENTENCE OF FOUR AND ONE-HALF (4-1/2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $1,000, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**