# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-00566-SCT

*TABITHA YOLANDA MILLER a/k/a TAB*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/11/2005 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CAROL L. WHITE-RICHARD |
| | PHILLIP BROADHEAD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | JOYCE IVY CHILES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 05/17/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    Tabitha Yolanda Miller appeals from her conviction of manslaughter and sentence to twenty years in the custody of the Mississippi Department of Corrections.  She raises two issues: (1) the violation of her right to a speedy trial and (2) the denial of a fundamentally fair trial because she was not allowed to present evidence of prior abuse inflicted upon her by the deceased in support of her self-defense theory of the case.  Issue (1) is brought for the first time on appeal.  As the verdict of the jury is reversed and this case is being remanded for a new trial, we dismiss this issue without prejudice, to be properly filed with the trial court.  In regard to Issue (2), this Court finds the trial court erred in excluding relevant evidence to

corroborate Miller's testimony and that such error affected the jury verdict. Therefore, because Miller was denied a fair trial, the verdict is reversed and the case remanded for a new trial.

**FACTS**

¶2.     Miller and Calvin James had a brief, but tumultuous, romantic relationship.[1] James abused drugs and was frequently violent toward Miller, including physically attacking her with a broken bottle in June 2000 and with a box cutter in October 2000, so as to twice cause injuries requiring medical treatment in the months preceding his death. Additionally, in early November 2000, James broke into Miller's home and left her with a black eye, before being arrested for burglary.

¶3.     On November 23, 2000, four or five days after breaking up with James, Miller and her four children were invited to Thanksgiving dinner at the home of Tasha Lewis's mother. That afternoon, James appeared there intoxicated[2] and caused a disturbance. He cursed Miller and told her, "[y]'all got death on y'all. My mammie, my daddy, *and you*." (Emphasis added).[3] Following dinner, Miller drove to the home of Mary Johnson ("Mary"),

---

[1]Miller testified they were not together long because "[h]e used to mistreat me."

[2]James's autopsy revealed "the presence of ethyl alcohol, drinking alcohol, at a high level in the blood system as well as the urine at a concentration of 0.18 percent, ethyl alcohol in the blood and 0.29 percent in the urine specimen." Moreover, the physician who performed the autopsy averred that "the blood alcohol was with reasonable certainty higher than what is recorded in that there was administration of fluids to the decedent which would have a dilutional effect o[n] the blood ethyl alcohol level."

[3]This statement was corroborated by Lewis.

Miller's "ex-sister-in-law."[4] Upon arrival, she saw James coming down the street and, according to Miller, "he went on in the house behind me cursing."

¶4.    Thereafter, James asked for a screwdriver. When Mary told him she did not have a screwdriver, he asked for a knife. According to Mary, "we asked him what he was going to do with it. He said that he was going outside to get [the] door off the old abandoned house, because he had to fix [Miller's] door."

¶5.    When James came back inside, Miller testified that she was sitting on the arm of the couch in the living room and he again began cursing her. She then went into the kitchen and asked Mary's daughter, Brittany, to cut her a piece of cake. Brittany washed off a knife and handed it to Miller. At that point, James began pushing and shoving her, telling her "[l]et's go." She then called 911. James continued to curse Miller. She initially did not respond because she "kn[e]w how he is[,]" but then told him to leave her alone. He then punched her in the face. When she warned him to get back, James grabbed a butcher knife and drew it back.[5] Afraid that James was going to stab her, Miller stabbed him in the chest. James began approaching her again and Mary pulled him back. He then collapsed on the living room floor. Miller again called the police. James was pronounced dead at the local hospital soon thereafter. Miller admits that she initially told the police that James fell on the knife.

¶6.    Miller was arrested and charged with murder on November 23, 2000. Subsequently, she was indicted for manslaughter on May 10, 2001. On June 19, 2001, Miller served the

_____

[4]According to Mary, she and Miller were "still friends" at this time.

[5]According to Miller, "[James] had [the knife] on the side of him at first when he was coming toward me, and then he raised it up."

district attorney with a "Demand for Discovery and Speedy Trial" which stated, in part, that "[Miller] does hereby demand a speedy trial pursuant to the laws and statutes of the State of Mississippi, and pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and pursuant to Article 3, Section 26 of the Mississippi Constitution."[6] No motion for a speedy trial was filed by Miller with the circuit court either before the verdict or in post-trial motions.

¶7.    Mary and her daughter, Andrekia, had given statements to the police soon after the incident which indicated that James had verbally abused and hit Miller moments before she stabbed him. At trial, the testimony of Mary and Andrekia changed substantially. They testified at the trial that, although James was cursing and walking toward Miller, he was unarmed and had not hit her.[7] On cross-examination, the defense confronted Mary with her earlier statements to the police. While confessing that she had earlier lied to the police in part, she defiantly declared that she never told the police that she first saw James with a knife or that "he killed hisself cause he the one come in the house with the knife." She maintained this position even after being informed that there was a transcript of her tape-recorded statement. On direct examination, Andrekia did not remember giving the police a statement after the incident. On cross-examination, however, Andrekia was shown a transcript of the statement and testified, "I remember this right here[,]" after giving conflicting trial testimony.

---

[6]This demand was also filed with the Washington County Circuit Clerk.

[7]Note that Travis Johnson, Mary's son, testified that James had "jumped at" Miller, "[a]cting like he was going to hit her[,]" before she stabbed him.

4

¶8. Additionally, Miller sought to introduce the testimony of Officers Thomas Ross and Freddie Cannon of the Greenville Police Department to corroborate her testimony regarding prior abuse inflicted upon her by James, under Miss. R. Evid. 404(a)(2). The State objected to Ross's testimony, which pertained to the June 16, 2000, incident of physical abuse, on grounds of remoteness. Likewise, the State objected to Cannon's testimony, which pertained to the November 5, 2000, burglary incident. The circuit court sustained both objections. Thereafter, Miller proffered testimony of both officers. Officer Ross testified that he was dispatched to the hospital following an assault in which Miller was the victim and James was the suspect. According to Officer Ross, Miller recounted that after a dispute arose over a crack pipe, "she said . . . that [James] picked up a bottle and hit her on the left arm next to the elbow causing a cut to her arm that had to be stitched up by the doctor." Officer Cannon testified that he arrested James for burglarizing Miller's home.

¶9. On February 9, 2005, the jury found Miller guilty of manslaughter. The Circuit Court of Washington County then sentenced her to twenty years in the custody of the Mississippi Department of Corrections. Miller's motion for judgment notwithstanding the verdict ("JNOV") or, in the alternative, for a new trial, which did not raise the speedy trial issue, was denied by the circuit court. Thereafter, she filed notice of appeal.

## ANALYSIS

### I. DENIAL OF A SPEEDY TRIAL.

¶10. This Court has stated that the:

> [r]eview of a speedy trial claim encompasses the *fact question* of whether the trial delay rose from good cause. Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence. If no

5

probative evidence supports the *trial court's finding* of good cause, this Court will ordinarily reverse.

*DeLoach v. State*, 722 So. 2d 512, 516 (Miss. 1998) (citations omitted) (emphasis added).

Miller now argues, for the first time, that the delay in her trial violated a statutory right to a trial within 270 days of her arraignment under Miss. Code Ann. § 99-17-1[8] (Rev. 2000) and a constitutional right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution;[9] Article 3, Section 26 of the Mississippi Constitution; and the unanimous holding of the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

¶11.   As this issue is raised for the first time on appeal, the trial court was not afforded the opportunity to conduct an evidentiary hearing and consider evidence and/or testimony regarding the speedy trial issue. This Court is ill-suited to act as a fact-finder. *See Southern v. Miss. State Hosp.*, 853 So. 2d 1212, 1214 (Miss. 2003) ("The role of an appellate court is not to be a fact finder but rather determine and apply the law to the facts determined by the trier of fact."). Therefore, this issue is dismissed without prejudice. If properly filed, the circuit court, a court of record, with testimony and exhibits, is better positioned to assess Miller's claim of a speedy trial violation under the totality of the circumstances via an

---

[8]Which states, "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court *shall* be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev. 2000) (emphasis added).

[9]In *Klopfer v. North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967), the United States Supreme Court established that *the right to a speedy trial is fundamental* and, therefore, imposed upon the states by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

evidentiary hearing. At that evidentiary hearing, both the defendant and the State may address the length of the delay, the reason for the delay, the timeliness and adequacy of Miller's assertion of her right, and prejudice to Miller,[10] along with other relevant circumstances. *See Barker*, 407 U.S. at 530, 533.

## II.  DENIAL OF A FUNDAMENTALLY FAIR TRIAL.

¶12.    Regarding the testimony of Officers Ross and Cannon, Miller argues that:

> [p]resentation of credible evidence of the continuing course of violence that James inflicted on [Miller] in an attempt to establish the reasonableness of her belief that the danger to her of death or great bodily harm was imminent was denied by the trial court, thereby eliminating the material facts that were imperative to aid the jury in understanding the dire situation that [Miller] faced, and thereby rendering a fair verdict based on all of the material evidence in this case.

Furthermore, Miller insists that:

> [t]he trial court erroneously and with great prejudice to [Miller] refused to allow the testimony of the officers, which was absolutely essential to corroborate not only the details of [Miller's] testimony, but also her theory of defense, clearly establishing [Miller's] state of mind to the jury at the time of the incident.

In total, Miller asserts that because "the jury was not able to place themselves in [Miller's] position at the time of the killing and apprehend the situation as it was to her," she "was prejudiced and the court committed reversible error by refusing to allow the testimony

---

[10]Regarding Miller's argument that a change in witness testimony constitutes prejudice, this Court notes that, at present, she offers no proof, only inferences. Furthermore, "[c]hanges in witnesses' testimony are not necessarily due to the passage of time and do not, by themselves, constitute proof of prejudice due to delay." *State of Wisconsin v. Huusko*, 2006 Wisc. App. LEXIS 837 at *4 (Wisc. App. 2006). This Court is fully aware that witnesses regularly change their testimony and that, standing alone, does not mean that a delay in trial caused her prejudice.

pursuant to Miss. R. Evid. 404(a)(2)." In response, the State unpersuasively maintains that the testimony of Officers Ross and Cannon was cumulative and any resulting error was harmless.

¶13. According to this Court:

> [t]he admissibility of testimonial evidence is left to the sound discretion of the trial court *within the boundaries of the Mississippi Rules of Evidence*, and it will not be found in error unless it has *abused its discretion*. Such error will warrant reversal only when the abuse of discretion has resulted in *prejudice* to the accused.

*Harris v. State*, 861 So. 2d 1003, 1018 (Miss. 2003) (emphasis added). Miss. R. Evid. 404(a)(2) provides, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except: . . . [e]vidence of a pertinent trait of character of the victim of the crime offered by an accused . . . ." Miss. R. Evid. 404(a)(2). However, "such evidence is *not competent until* there has first been some evidence that the victim had been the aggressor." *Robinson v. State*, 566 So. 2d 1240, 1241 (Miss. 1990) (emphasis added). In the case sub judice, sufficient evidence was adduced to create a jury issue as to whether James was the aggressor in the November 23, 2000, incident. Mary's statement to the police provided that James was verbally abusive to Miller and had wielded a knife in the kitchen; Andrekia's statement to the police said that James verbally abused and hit Miller before she stabbed him; Lewis testified that James threatened Miller earlier in the day, stating that "she got death around her[;]" and Miller testified that James punched her in the face and was about to stab her with a butcher knife when she stabbed him. "[W]here any doubt exists as to who was the aggressor in an incident which results in the death of a participant or where a defendant

8

claims self-defense, evidence of a deceased's previous threats and harassments against defendant . . . is admissible." ***Day v. State***, 589 So. 2d 637, 642 (Miss. 1991). The importance of admitting such evidence lies in the fact that it "enables jurors to put themselves in the defendant's place at the time of the killing and view the situation as it appeared to him." ***Id***. The testimony of those officers was relevant to support her testimony of prior incidents. Given that evidence was presented that James was the aggressor, this Court finds that the circuit court abused its discretion in deeming the testimony of Officers Ross and Cannon inadmissible. Furthermore, this error was not harmless, as it cannot be maintained that "the same result would have been reached had [the error] not existed." ***Burnside v. State***, 882 So. 2d 212, 216 (Miss. 2004) (quoting ***Lancaster v. State***, 200 So. 721, 722 (Miss. 1941)). In short, "[w]ithout all the facts and circumstances surrounding the [incident], the jury was handicapped in determining what really occurred, and [Miller] was prejudiced by any decision that resulted." ***Day***, 589 So. 2d at 644. Given that prejudice, this case is reversed and remanded to the circuit court for a new trial.

## CONCLUSION

¶14.   Based upon the aforementioned analysis, this Court finds that Issue (1) was improperly raised for the first time on appeal and, therefore, is dismissed without prejudice to properly file a motion in the trial court. Regarding Issue (2), this Court finds the trial court erred in excluding relevant and probative evidence which affected the jury verdict. As Miller was denied a fair trial, the verdict is reversed and the case remanded for a new trial.

¶15.   **REVERSED AND REMANDED.**

9

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**