# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-01340-COA

**GEORGE ANDERSON A/K/A GEORGE YAHIM ANDERSON**        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

DATE OF JUDGMENT:        09/01/2021
TRIAL JUDGE:        HON. JOHN KELLY LUTHER
COURT FROM WHICH APPEALED:        UNION COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
       BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
       BY: LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY:        BENJAMIN F. CREEKMORE
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:        AFFIRMED - 01/17/2023
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. George Anderson appeals his jury conviction of burglary of a dwelling and his sentence of twenty-five years of incarceration as a habitual offender imposed by the Union County Circuit Court. On appeal, Anderson argues that his trial was unfair because of the admission of other-bad-acts evidence and because he received ineffective assistance of counsel when his attorney failed to object to the admission of hearsay. Having reviewed the record and considered the arguments of counsel, we affirm his conviction and sentence.

## Facts

¶2. On September 28, 2020, as Clarence Dee Parker drove up the half-mile driveway to

his home in Union County, Mississippi, he encountered a silver Tahoe. He rolled down his window, as did the driver of the Tahoe, whom Parker later identified as Anderson. The driver said that a security alert from Parker's house had been received and that Anderson would be right back. Parker noted that the driver was wearing a camouflage hoodie with cut-off sleeves. Parker noted the Tahoe's license number from his rear-view mirror and proceeded to his home, which is located near his in-law's house. Seeing his dog outside, Parker knew that someone had been inside to let the dog out, and Parker concluded that he had been robbed. He called the Union County Sheriff's Department, and after Deputy Brian Carpenter arrived moments later, they went inside. Parker found several items missing, including a sentimental pottery cup full of change and his wife's jewelry box.

¶3.     Parker gave Carpenter the description of the man in the Tahoe and the Tahoe's license number as best he could recall, PWB 7250. Parker later forwarded Carpenter the video recordings from his and his in-law's motion-activated home security cameras. Parker identified the man shown in these videos entering his house as the man driving the Tahoe. No fingerprints were taken at the scene.

¶4.     Carpenter could not identify the vehicle from the license plate number Parker gave him, but through a special computer program, he was able to narrow the search to include Beverly Agnew as a possible owner. Carpenter issued a "Be on the Lookout" (BOLO) alert for the Tahoe to law enforcement in the surrounding counties. A few weeks later, the Marshall County Sheriff's Department responded that similar incidents involving a silver Tahoe had been reported there and provided Carpenter with the correct tag number, PWB

7820. From this information, Carpenter confirmed the probable owner of the Tahoe was Agnew, whom Carpenter then interviewed.

¶5.     During that interview, Carpenter showed Agnew still photographs from Parker's home-surveillance footage, and Agnew identified Anderson as the individual in them. Agnew gave investigators Anderson's phone number from which investigators were able to locate Anderson in DeSoto County. Agnew also told investigators that Anderson had rented a room at the Clarion Inn in Tupelo.

¶6.     Investigators secured an arrest warrant for Anderson and a search warrant for the hotel room. But when they searched Anderson's room, they only found a jewelry hanger. None of Parker's stolen items were found in Anderson's room. The hotel manager told investigators that the night before, a woman had come and emptied the hotel room. From hotel surveillance tapes, investigators identified Sherry Holland as that woman.

¶7.     DeSoto County officers arrested Anderson at the Tanger Outlet Mall.[1] As Officer Carpenter traveled to Holland's home in Water Valley, Mississippi, to question her, Carpenter was informed about a jailhouse conversation between Holland and Anderson. Anderson reportedly told Holland that if law enforcement questioned her, she should tell them that they had broken up their relationship several weeks before.

¶8.     When Carpenter arrived at Holland's home, she was cooperative and told investigators that she and Anderson had met on a dating site and had dated for several months before

---

[1] Carpenter testified that Anderson had a watch, a bracelet, and a ring on him when he was arrested. The watch belonged to Shaun Anderson and was stolen during a Marshall County burglary.

Anderson was arrested in October 2020. She said that Anderson called her, told her that he had been arrested for traffic violations, and directed her to go to the hotel and remove his belongings, which included items his son had brought to him when his son allegedly closed his storage unit.[2] Holland did this and took what she collected to her home, including Anderson's clothes in a garbage bag. Among the items were jewelry and a camouflage hoodie with cut-off sleeves. When she learned that the items she had taken from Anderson's hotel room were stolen, Holland readily surrendered them to law enforcement. Holland also identified Anderson as the individual in a photo taken from Parker's surveillance video.

¶9.     Carpenter took all the items to the Lafayette County Sheriff's Department, which had responded to Carpenter's earlier BOLO alert. The department reported that the home of Phyllis Wait had been burglarized a few days after Parker's home. Reportedly, a silver Tahoe was seen by a neighbor driving by the home and then turning into the driveway. Wait reported jewelry, car titles, and other items stolen. Carpenter told Lafayette County law enforcement that Anderson may have been the perpetrator in the Wait burglary.

¶10.    Carpenter called Parker who came to the Lafayette County Sheriff's Department where he identified the black jewelry box, his wife's bracelet, and the pottery bowl that had contained his change. He also identified the camouflage hoodie Holland retrieved as similar to the one worn by the driver of the Tahoe whom he had encountered in his driveway. Wait was also called to the sheriff's department to view the items retrieved from Anderson's hotel

_____

[2] Holland testified that she had stayed at the hotel with Anderson and actually worked remotely at her IT job from there for several months. She said Anderson, who claimed to work in real estate, would leave during the day for various reasons. She said she stopped going to the hotel in August.

4

room, and she too identified many of her stolen items among them. Other stolen items retrieved were released to Jason Mills, an investigator with the Marshall County Sheriff's Department, and Julia Sanders, when it was determined that they were related to the burglary incidents there.

¶11. On October 19, 2020, Anderson was indicted in Union County for burglary of Parker's dwelling in violation of Mississippi Code Annotated section 97-17-23(1) (Rev. 2020).[3] The indictment also charged Anderson as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2020) because of Anderson's prior felony convictions.[4] Anderson previously had pleaded guilty to felony larceny on December 15, 2009, in Warren County, where the circuit court sentenced him to serve ten years in the custody of the

---

[3] Section 97-17-23(1) provides:

Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

[4] Section 99-19-81 provides:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony unless the court provides an explanation in its sentencing order setting forth the cause for deviating from the maximum sentence, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Mississippi Department of Corrections. Before that, Anderson pleaded guilty to possession of burglar's tools in November 2007, for which the Rankin County Circuit Court sentenced him to five years in custody, with four years suspended, and supervised probation. In September 2008, Anderson's probation was revoked, and he returned to prison.

¶12. During Anderson's two-day trial, starting August 31, 2021, Parker, Carpenter, and Holland testified to the facts stated above. As the home surveillance videos were shown to the jury during his testimony, Parker identified the person entering his house as the man in the camouflage hoodie who was driving the Tahoe he met coming down his driveway.

¶13. During the trial, over Anderson's objection, the State called Wait, who testified that her home had been burglarized in September 2020.[5] Wait stated that a neighbor who was outside cutting wood told her husband that he saw a silver Tahoe slowly drive by the Wait home several times and then turn in the driveway. Wait testified that the back door had been kicked open, and jewelry, two car titles, their birth certificates, and an iPad were stolen. Law enforcement contacted Wait after they had retrieved the stolen property from Holland, and Wait testified that the iPad, car titles, some cheap jewelry, a firebox containing personal papers and other keepsakes, and a jewelry hanger were hers. Wait also testified that she saw a picture of Anderson's hotel room, and hanging from a lamp was one of her turquoise decorative jewelry hangers. On cross-examination, Wait said that law enforcement dusted several places in her home for fingerprints, but to her knowledge, no match to anyone was

---

[5] Prior to trial, the State had filed a motion for the admission of her testimony, and Anderson filed a motion in limine to exclude it. The circuit court granted the State's motion. The content and bases for the motion will be discussed further below in this opinion.

6

made.

¶14. After the State rested, Anderson moved for a directed verdict, which the circuit court denied. Anderson chose not to testify and called no witnesses in his defense. The jury was instructed, and then they deliberated and found Anderson guilty as charged. The circuit court proceeded with the sentencing hearing and the State called the sheriff to testify about Anderson's prior convictions which were entered into evidence. The court proceeded to sentence Anderson as a non-violent habitual offender to serve twenty-five years in the custody of the Mississippi Department of Corrections, which is the maximum sentence for the crime of burglary of a dwelling under Section 97-17-23.

¶15. Anderson filed a motion for judgment notwithstanding the verdict or a new trial on September 9, 2021. The circuit court denied this motion on November 12, 2021, and Anderson appealed on November 24, 2021.

¶16. On appeal, Anderson contends (1) that his trial was unfair because of the admission of irrelevant other-bad-acts evidence and (2) that he received ineffective assistance of counsel when his attorney failed to object to the admission of inadmissible hearsay evidence.

**Standard of Review**

¶17. "An appellate court's standard of review of a trial court's admission or exclusion of evidence is abuse of discretion." *Carothers v. State*, 152 So. 3d 277, 281-82 (¶14) (Miss. 2014) (citing *Osborne v. State*, 54 So. 3d 841, 845 (¶12) (Miss. 2011)). "Where the improperly admitted evidence is largely cumulative of other evidence before the jury, and the evidence presented against the defendant, taken as a whole, is overwhelming, the error may

7

be harmless." *Sanders v. State*, 228 So. 3d 888, 891 (¶13) (Miss. Ct. App. 2017). To prevail on a claim of ineffectiveness of counsel, "[a] defendant must demonstrate that [her] counsel's performance was [(1)] deficient and [(2)] that the deficiency prejudiced the defense of the case." *Burnside v. State*, 882 So. 2d 212, 216 (¶20) (Miss. 2004) (quoting *Burns v. State*, 813 So. 2d 668, 673 (¶14) (Miss. 2001)).

## Discussion

### I. Whether the circuit court erred in admitting other-bad-acts evidence.

¶18. Before trial, the State filed a motion to enter evidence of other burglaries in the case against Anderson for his alleged burglary of Parker's residence. The State sought to enter evidence obtained from a Marshall County burglary investigation that involved a silver Tahoe and from the Wait burglary in Lafayette County. The State also sought to present evidence of other burglary incidents, including:

(a) a September 17, 2020 Burglary of Dwelling in Marion County, Alabama.

(b) Burglary of a Dwelling/Home Invasion in Itawamba County that occurred on or about September 17, 2020 where witness Brenda Sue Fain will identify George Anderson as the burglar.

(c) Burglary of a Dwelling in Monroe County that occurred on or about September 21, 2020, where the victim, Debra Worthey, will identify a 410-shotgun among items recovered by Holland.

(d) Burglary of a Dwelling in Prentiss County that occurred on or about September 22, 2020.

(e) Burglary of a Dwelling in Benton County that occurred on or about September 28, 2020.

(f) Burglary of a Dwelling in Lafayette County that occurred on or about October 2, 2020.

(g) Burglary of a Dwelling in Marshall County that occurred on or about October 6, 2020.

(h) Burglary of a Dwelling in Alcorn County that occurred between the

8

dates of September 15-20, 2020, where the victim, Betty Vandergriff, will testify and identify a cellular phone among the items Holland retrieved from Anderson's hotel room.

Anderson opposed this motion and filed his own motion to exclude this evidence, pointing out that he had not pleaded guilty to any of these other incidents and arguing that the probative value of this evidence did not outweigh the prejudice that it would cause.

¶19. On August 30, 2021, the circuit court ruled that the State could present evidence relevant to the Marshall County burglary including that a silver Tahoe had been seen at the house that was burglarized and that Marshall County investigators had provided Union County law enforcement with the correct tag number. The court also allowed evidence relating to the Lafayette County burglary including testimony that a silver Tahoe was seen driving by the Waits' home and that the items taken from that home were among the items collected by Holland from Anderson's hotel room. The court found that the information from both of these occurrences was interrelated with the Union County burglary. The court also allowed gave a limiting instruction on this evidence. However, the court prohibited the State from presenting any evidence that Anderson had been indicted for the burglaries in these counties. The court did not address the other incidents listed in the State's motion, and the State did not attempt to introduce those other incidents at trial.[6]

¶20. Anderson now argues that even the evidence and testimony involving the Marshall and Lafayette County burglaries were "other bad act" evidence that is prohibited under Mississippi Rules of Evidence 404(b) and 403.

---

[6] The circuit court also prohibited the mentioning of Anderson's prior convictions in Illinois and in Warren County and Rankin County.

¶21. Mississippi Rule of Evidence 404(b) dictates when other-bad-acts evidence may and may not be used:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

"Evidence of other bad acts is only admissible if it is relevant to an issue in the case being tried and if the prosecutor clearly articulates the alternative purpose for the evidence, showing that a Rule 404(b) exception is met." *Jones v. State*, 287 So. 3d 995, 1005 (¶34) (Miss. Ct. App. 2019) (citing *Strickland v. State*, 220 So. 3d 1027, 1033-34 (¶¶15-16) (Miss. Ct. App. 2016)). However, even if admissible, the court must weigh whether the probative value of the evidence of the other bad acts is substantially outweighed by the danger of unfair prejudice to the defendant. *Id*. at (¶35); MRE 403.

¶22. We recently held in *Turner v. State*, 292 So. 3d 1006 (Miss. Ct. App. 2020), that "where another crime or acts is so interrelated to the charged crime so as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences, proof of the other crime or act is admissible." *Id*. at 1028 (¶69) (citing *Townsend v. State*, 681 So. 2d 497, 506 (Miss. 1996)). We pointed out that the other crime must be "integrally related to time, place, and fact" to the crime for which the defendant is standing trial and that the admission of this evidence must be necessary to tell a complete and coherent story and prevent confusing the jury. *Id*.

¶23. Anderson makes arguments similar to those made by the defendant in *Horton v. State*, 253 So. 3d 334 (Miss. Ct. App. 2018). In that case, while police were responding to an armed robbery of a Burger King, dispatch radioed that a Popeye's had been robbed as well. *Id*. at 336 (¶2). At Popeye's, an employee reported that the masked men drove up in a "dark red" car. *Id*. at (¶3). After being arrested, Horton (the defendant) confessed to robbing the Waffle House, robbing the Popeye's, and carjacking the dark-red car that he had driven in both robberies. *Id*. He was indicted for the attempted robbery at the Burger King and the robbery at Popeye's. *Id*. at 337 (¶5). Over his objection, the State was allowed to present evidence of the carjacking and the robbery at the Waffle House, which, on appeal, he claimed was impermissible other-bad-acts evidence. *Id*. at 339 (¶14). Horton argued that the evidence was not necessary to prove that he had robbed either Popeye's or Burger King. *Id*. at (¶18). This Court disagreed and held:

> Proof of another crime or act is allowed when it is so interrelated to the charged crime that it constitutes either a single transaction or occurrence or a closely related series of transactions or occurrences. *Price v. State*, 898 So. 2d 641, 653 (¶30) (Miss. 2005). "The State has a legitimate interest in telling a rational and coherent story of what happened, and where substantially necessary to present to the jury the complete story of the crime, evidence or testimony may be given even though it may reveal or suggest other crimes." *Davis v. State*, 40 So. 3d 525, 530 (¶18) (Miss. 2010).

*Id*. at (¶19). We also agreed with the State that the evidence was relevant to prove his identity and to corroborate the Popeye's employee's testimony of the dark red car used. *Id*. at 341 (¶20).

¶24. In this case, the identification of the Tahoe involved in the Marshall County burglary led Union County law enforcement to the owner, which in turn led to the identification of

11

Anderson as the perpetrator of the burglary of Parker's home.[7] As such, this evidence was highly relevant and admissible in Anderson's case. The testimony from Ms. Wait concerning the alleged burglar's use of a silver Tahoe also was relevant to show a similar modus operandi. Moreover, Ms. Wait also testified that jewelry stolen from her in that burglary was among the items found in Anderson's hotel room, linking her burglary to Anderson. The evidence of both burglaries, contemporaneous in time to Parker's burglary, gave the jury a complete story of law enforcement's investigation and the manner and method that the crimes were committed; the evidence also helped identify Anderson as the perpetrator.

¶25. Even if the circuit court abused its discretion in admitting the hearsay testimony concerning the Tahoe in the Lafayette County robbery, we find that the error was harmless. "Errors in the admission of evidence are subject to a harmless-error analysis." *Smith v. State*, 136 So. 3d 424, 435 (¶26) (Miss. 2014). Unless it is clear beyond a reasonable doubt that the error contributed to the verdict, we need not reverse a conviction. *Id*. at (¶27). In this case, there was other clear evidence from the surveillance photos, from Parker's and Holland's testimony, and their identification of Anderson to support the jury's conviction. Thus, the admission of the hearsay concerning the Tahoe used in the Lafayette burglary was harmless error, if any. In summary, we find no reversible error by the circuit court in its admission of the Marshall County and Lafayette County crimes evidence under Rule 404(b).

---

[7] Carpenter's testimony that Holland identified Anderson did not constitute inadmissible hearsay. "Statements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Eubanks v. State*, 291 So. 3d 309, 322-23 (¶51) (Miss. 2020) (quoting *Smith v. State*, 258 So. 3d 292, 309 (¶52) (Miss. Ct. App. 2018)).

## II. Whether Anderson's representation was constitutionally ineffective.

¶26. Again, to prevail on a claim of ineffectiveness of counsel, "[a] defendant must demonstrate that his counsel's performance was [(1)] deficient and [(2)] that the deficiency prejudiced the defense of the case." *Burnside*, 882 So. 2d at 216 (¶20) (quoting *Burns*, 813 So. 2d at 673 (¶14)). "With regard to the showing of deficient performance, this Court's inquiry will focus on whether counsel's performance fell below an objective standard of reasonableness." *Simon v. State*, 857 So. 2d 668, 682 (¶23) (Miss. 2003). "Defense counsel is presumed competent, and this Court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional assistance." *Id*. There is also a presumption that decisions made by defense counsel are strategic, and this Court "will not second-guess counsel's decisions that fairly may be characterized as strategic." *McCray v. State*, 263 So. 3d 1021, 1027 (¶14) (Miss. Ct. App. 2018) (citing *Shinn v. State*, 174 So. 3d 961, 966 (¶12) (Miss. Ct. App. 2015)). We look "at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial." *Howell v. State*, 163 So. 3d 240, 259 (¶49) (Miss. 2014) (quoting *Williams v. State*, 73 So. 3d 1125, 1129 (¶12) (Miss. 2011)).

¶27. Finally, even if Anderson's attorney failed to object to hearsay as Anderson contends, to establish constitutionally ineffective assistance of counsel, Anderson must also show that his counsel's actions prejudiced him to the extent that he was denied a fundamentally fair trial. In *Dickerson v. State*, No. 2015-DR-00954-SCT, 2021 WL 1309768, at *9 (¶41) (Miss. Apr. 8, 2021), the Mississippi Supreme Court stated:

To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Our review is highly deferential to the attorney, with a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance.

¶28. "Ineffective-assistance-of-counsel claims should ordinarily be raised in a petition for post-conviction relief, not on direct appeal." *Hamer v. State*, No. 2019-KA-01633-COA, 2022 WL 680013, at *8 (¶48) (Miss. Ct. App. Mar. 8, 2022) (citing *Hamlin v. State*, 306 So. 3d 843, 844 (¶2) (Miss. Ct. App. 2020)). "The Court will address such claims on direct appeal when (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate, and the appellate court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id*.

¶29. Anderson stipulates that the record is adequate for us to consider his claim of ineffective assistance of counsel, pointing to several instances where his attorney failed to object to hearsay testimony. The alleged hearsay he challenges included Carpenter's testimony that Agnew identified Anderson from photos from the Parker surveillance tape and that she told Carpenter she had allowed Anderson to use her vehicle. In addition, Wait was allowed to testify that her husband was told by a neighbor that a silver Tahoe had been casing their home. Finally, Anderson said Carpenter testified without objection that he was told about the jailhouse conversation between Anderson and Holland.

¶30. Anderson raises his counsel's failures to object to this hearsay testimony as the basis for his claim of ineffective assistance of counsel claim. However, we have already found

14

that the circuit court's admission of Wait's testimony concerning the Tahoe's involvement in her burglary was not error, or if anything, it was harmless error. In addition, Carpenter's testimony about the facts uncovered in the Marshall County burglary that led to the identification of Anderson in the Parker case was admissible to show the course of his investigation, as noted in footnote 7 of this opinion. Moreover, Anderson's counsel did file a motion in limine to exclude both the Marshall County and Lafayette County investigation-related evidence. By doing so, Anderson's counsel preserved these issues for appeal, and she had no reason to object a second time at trial when the circuit court had already ruled on the admissibility of the evidence.

¶31. The third instance of unobjected-to hearsay (i.e., Carpenter's testimony that he was told about Anderson's jailhouse conversation with Holland concerning whether they were still dating) had little or no bearing on Anderson's guilt or innocence of the Parker burglary in light of the direct evidence presented by witnesses, photos, and surveillance videos. To prevail on an ineffective-assistance-of-counsel claim, the defendant must show

> that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

*Strickland v. Washington*, 466 U.S. 668, 694 (1984). Here, Anderson presents no proof that the hearsay testimony of his conversation with Holland would have created reasonable doubt in the minds of the jurors as to whether Anderson had entered the Parker home and stolen the items Parker identified. As the Supreme Court pointed out in *Strickland*, some factual

15

findings may be unaffected by the errors, and others might. *Id*. at 695-96. The stronger the other evidence is, the less likely that the error affected the verdict. *Id*. at 696. In this case, we have already noted the strength of the evidence against Anderson, and we find no prejudice caused by the admission of this extraneous conversation Anderson purportedly had with Holland concerning their relationship. Looking at the totality of circumstances, we find that Anderson's counsel's efforts were neither deficient nor prejudicial. Accordingly, we find no merit to Anderson's ineffective-assistance-of-counsel claim.

### Conclusion

¶32. Because we find no reversible error by the circuit court in the admission of testimony relating to the Marshall and Lafayette County burglaries, we affirm Anderson's conviction and sentence. We further find no merit to Anderson's claim of ineffective assistance of counsel as presented on the face of the record we have before us.

¶33. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

16