IRVING, P.J.,
for the Court:
¶ 1. This appeal arises from the Hancock County Circuit Court’s denial of John Edward Corser’s motion in limine to exclude evidence of his vasectomy and his Viagra use. A jury found Corser guilty on two counts of sexual battery, and the circuit court sentenced him to thirty-five years for each sexual-battery conviction, with the sentences to run concurrently. Corser argues that the circuit court erred in allowing the State to present evidence of his vasectomy and his Viagra use because the *358 evidence was prejudicial and had no probative value.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. In 2009, Corser lived with his wife Amy, his twelve-year-old stepdaughter Marie,[1] his stepson Jacob, and his and Amy’s biological son Timothy. On October 24, 2009, Timothy had a birthday party at their home. Once the birthday party concluded, Amy left, and Corser decided to stay home with their children and the remaining party guests. While Marie sat on the couch, Corser began touching her between her legs over her clothes. When she told Corser to stop, he grabbed her by her jacket and pulled her into the bathroom. Corser closed the bathroom door, bent her over the toilet, pulled her pants down, and inserted his penis into her vagina. Afterwards, Corser turned Marie around, placed his hands around her neck, and told her not to tell anyone or he would kill her and her mother.
¶ 4. Corser would always get home from work thirty minutes to an hour before Amy did and would go to his and Amy’s bedroom, close the door, and stay in the bedroom for a while. One day in December 2009, after Corser had arrived home from work and spent time in the couple’s bedroom, he told Jacob to go take a shower and told Timothy to go play in the game room. Corser took Marie to her bedroom, locked the door, and forced Marie to have sexual intercourse with him on her bed. The abuse would occur almost daily unless Amy was off work.
¶ 5. Jacob’s testimony corroborated Marie’s testimony regarding both the October and December incidents. During the October incident, Jacob knocked on the bathroom door. Marie responded that she was almost done using the bathroom, sounding scared and panicked. Soon after, Jacob saw Corser’s face when Corser opened the bathroom door slightly. During the December incident, Jacob heard Marie crying inside her bedroom while Corser was in the bedroom with her. He also heard strange noises coming from Marie’s bed. He testified that Marie had told him what happened in both incidents.
¶ 6. Amy testified that in early 2009, she was using an intrauterine device (IUD) as a contraceptive. She stated that she and Corser discussed the dangers of leaving the IUD in past its suggested removal date. Amy asked Corser if he would be willing to consider getting a vasectomy. Corser told her that he wanted to think about having another child before making a decision on having a vasectomy. Consequently, Amy went to her doctor, had the IUD removed, and got a prescription for an oral contraceptive. Amy testified that in the summer of 2009, before she got the prescription filled, Corser told her that he had decided that he was going to get the vasectomy.
¶ 7. Amy described her sex life with Corser in late 2009 as “not that of a typical marriage.” More specifically, she stated that at that time, they would only have sex “maybe once every couple of weeks,” as opposed to the previous frequency of a couple of times per week. She added that Corser seemed “withdrawn and distant at that time,” but that she knew that Corser was taking Viagra. When asked if some of the Viagra pills were missing in late 2009, she stated that there was “a whole line missing” around the time that the number *359 of sexual encounters between them had declined. Marie told Amy about the abuse in December 2009. The first time that Amy Confronted- Corser, he denied that either incident had happened. The second time that Amy confronted him, he cried and apologized. -
¶ 8. Corser testified at trial and denied that either incident occurred. He stated that he and Amy had the initial discussion regarding the possibility of his getting a vasectomy in March or April 2009. He admitted that he did not want to get a vasectomy at first, but later changed his mind after he talked to his coworkers about it, and had the procedure done in early summer 2009. As for his Viagra use, Corser only stated that his wife knew that he was using Viagra and that she wanted him to be on Viagra.
¶ 9. Additional facts, as necessary, will be related in the analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 10. Corser insists that the circuit court erred in admitting evidence of his vasectomy and his Viagra use, as the evidence was irrelevant as to whether he committed sexual battery against Marie. Alternatively, he argues that the circuit court erred in “failing to conduct a balancing test to ensure that the evidence was not more prejudicial than probative.” When determining whether evidence is relevant and if the evidence that is admitted is more prejudicial than probative, the standard of review is abuse of discretion. Green v. State, 89 So.3d 543, 549 (¶ 15) (Miss.2012); Kelly v. State, 783 So.2d 744, 752 (¶ 21) (Miss.Ct.App.2000).

I. Vasectomy

¶ 11. In its ruling on Corser’s motion in limine, the circuit court determined that evidence of Corser’s vasectomy and his Viagra use was relevant because it “show[ed] the jury the whole picture as to the allegations.” We note that Corser and Amy had discussed the possibility of his having a vasectomy several months before the sexual battery began, and the operation had occurred several months before the first incident. It may very well be that Corser elected to have the vasectomy in preparation for the sexual battery, but on the other hand, his decision to finally have the vasectomy may have simply been in compliance with his wife’s earlier suggestion. The circuit court found that the evidence of Corser’s vasectomy was relevant, and we see no reason to disturb that finding because even if the court erred in its finding, the error is harmless, as the Mississippi Supreme Court has held that an error is harmless “[wjhere the prejudice from [an] erroneous admission of evidence dims in comparison to other overwhelming evidence [of guilt.]” Tate v. State, 20 So.3d 623, 639 (¶ 42) (Miss.2009) (quoting Carter v. State, 722 So.2d 1258, 1262 (¶ 14) (Miss.1998)). The overwhelming evidence against Corser supports his sexual-battery conviction absent any reference to Corser’s vasectomy. Accordingly, this issue is without merit.

II. Viagra Use

¶ 12. The circuit court did not err in determining that Corser’s Viagra use was relevant as to whether he committed sexual battery. There is sufficient evidence to make a reasonable inference that the Viagra was used in preparation for the sexual battery, as Amy testified that a “whole line” of the pills were missing, despite the decline in the frequency of their sexual encounters. Additionally, Corser would always get home from work earlier than his wife and go to their bedroom. Marie testified that after he would emerge *360 from the bedroom, he would tell her brothers to go take a shower or go play in order to get her into her bedroom to have sexual intercourse with her. On these facts, we cannot say that the circuit court abused its discretion in finding that evidence of Cor-ser’s Viagra use was relevant.
¶ 18. Corser argues that the circuit court did not conduct a Rule 403 balancing test on the record. Rule 403 of the Mississippi Rules of Evidence states that even relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” The circuit court stated during the hearing on Corser’s motion in limine that evidence of Corser’s Viagra use was “probative as to the elements of the crimes charged.”
¶ 14. Our supreme court has held that a circuit court’s failure to state Rule 403’s “magic words” does not mean that the court did not consider Rule 403’s requirements or that the court erred in its decision on admissibility. Tate, 20 So.3d at 639 (¶ 40). We need not determine whether the circuit court’s statement that Cor-ser’s Viagra use was “probative as to the elements of the crimes charged” constituted a proper Rule 403 balancing test. Even if the court erred and should have conducted a more thorough Rule 403 analysis on the record, the error was harmless, as there is no evidence that Corser was prejudiced by admission of the Viagra evidence or that its admission misled the jury or led to a confusion of the issues. Moreover, the totality of the evidence weighs overwhelmingly in support of Corser’s conviction. This issue is without merit.
¶ 15. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SEXUAL BATTERY, AND SENTENCE OF THIRTY-FIVE YEARS; AND COUNT II, SEXUAL BATTERY, AND SENTENCE OF THIRTY-FIVE YEARS, WITH BOTH SENTENCES TO RUN CONCURRENTLY AND TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PARDON, PAROLE, OR SUSPENSION OF SENTENCE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. BARNES AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. To protect the identity of minor victims of sexual abuse, we substitute fictitious names for the victim and close relatives of the victim.