# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00503-COA

**MALCOLM HORTON A/K/A MALCOLM DEVONTE HORTON A/K/A MALCOLM DEVONTE HORTON, JR.**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                                                             APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/04/2016 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/30/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., BARNES AND WESTBROOKS, JJ.

### BARNES, J., FOR THE COURT:

¶1.     On December 9, 2015, Malcolm Horton was convicted of armed robbery. He was sentenced by the Hinds County Circuit Court, First Judicial District, to thirty years in the custody of the Mississippi Department of Corrections (MDOC), with twenty years to serve, ten years suspended, and five years of post-release supervision. The court also ordered Horton to serve a consecutive sentence of five years for the use or display of a firearm during the commission of a felony under Mississippi Code Annotated section 97-37-37(1) (Rev.

2006). After the trial court denied his post-trial motion, Horton appealed. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On January 11, 2012, at approximately 10:45 p.m., Officer Stephanie Burse responded to a call regarding the attempted robbery of a Burger King on Robinson Road in Jackson, Mississippi. The assistant manager told Officer Burse that a masked gunman wearing a black shirt and jeans approached the restaurant while she was attempting to close; she ran back inside and hit the panic button, thwarting the robbery. While interviewing the employee, Officer Burse overheard a radio dispatch that a Popeyes's restaurant on Terry Road had been robbed.

¶3. Officer Ken Travis responded to the call regarding the Popeyes's robbery. He spoke with three employees, including the manager, Tameka Cross. The employees told Officer Travis that "they were approached by at least two males wearing black masks and black shirts." One employee, Nakisha Anderson, later testified that before the robbery she noticed a "dark red" car pull up next door and saw a masked male dressed in black get out and cock a pistol; so she and the other employee ran to a nearby store for help. Cross was forced back into the restaurant at gunpoint to open the safe, and the robber took approximately $700. While following Cross into the store, the gunman discharged his weapon into the air.

¶4. Horton was arrested a few days later in connection with the robberies. On January 19, 2012, he gave a recorded video statement to Detectives Eric Smith and Delars Smith, confessing to robbing the Popeyes and a Waffle House. Horton also gave a written statement

2

to Detective Marcus Williams, in which he said he "ran up on a woman at [a] Jasco (store) with a gun" and took her "maroon Impala." Consistent with his video statement, Horton stated that he had on a mask and "was in all black" and that after taking the car, he robbed the Popeyes and a Waffle House.

¶5. Horton was indicted on May 9, 2012. Count I alleged that he attempted to rob a Burger King restaurant using a handgun. Count II alleged that he robbed a Popeyes's restaurant using a handgun. The indictment also alleged that Horton violated section 97-37-37(1) for "having used a firearm during the commission of a felony." A jury trial was held on December 8-9, 2015. Horton was found guilty on Count II, but was acquitted on Count I. At a separate sentencing hearing, the trial judge sentenced Horton to thirty years in the custody of the MDOC, with twenty years to serve, ten years suspended, and five years of post-release supervision. He was also ordered to serve a five-year consecutive sentence under the firearm-enhancement statute.

¶6. On December 17, 2015, Horton filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied the motion, and he now appeals.

**DISCUSSION**

I. **Whether the trial court erred in denying Horton twelve peremptory challenges.**

¶7. During jury selection, the trial judge allowed both the defense and the State six peremptory challenges. Defense counsel argued that Horton should be given twelve peremptory challenges:

3

| MR. ROUTH: | Your Honor mentioned earlier to the jury six strikes or six peremptory challenges would be employed in this case. We believe it should be [twelve]. It's a capital case where a possible sentence of life is in play. . . . |
|---|---|
| THE COURT: | Is the State going to ask the jury to pass on sentence? |
| MR. SMITH: | No, Your Honor. We're not seeking life and we're not gonna instruct the jury in that regard. I believe they have to be the ones who sentence to life for armed robbery. |
| THE COURT: | All right. |
| MR. SMITH: | We believe six is appropriate since we're not seeking life. |
| THE COURT: | I agree. |
| | . . . . |
| | Well life is not a possibility, Mr. Routh. And I'm looking at [Uniform Rules of Circuit and County Court] Rule 10.01.[1] It says in felony cases not involving the possible sentence of death or life imprisonment, the defendant and the prosecution shall have six peremptory challenges with the selection of [twelve] jurors. And I believe that supports my ruling. |

Defense counsel continued to assert, however, that because armed robbery carries a *possible* life sentence, the court should allow twelve peremptory challenges, and he moved for a mistrial. The trial judge denied the motion.

¶8.     Horton claims that the trial court's ruling was an abuse of discretion. The State responds that because Horton was not facing life imprisonment, he was not entitled to twelve

---

[1] We note that the Uniform Rules of Circuit and County Court relating to criminal practice have been supplanted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017. But because the former rules were still in effect during Horton's trial, Rule 10.01 is applicable to his case.

peremptory challenges. Mississippi Code Annotated section 99-17-3 (Rev. 2015) provides in part: "In capital cases the defendant and the [S]tate shall each be allowed twelve peremptory challenges. In cases not capital the accused and the [S]tate each shall be allowed six peremptory challenges; but all peremptory challenges by the [S]tate shall be made before the juror is presented to the prisoner." We acknowledge that armed robbery is a capital offense. "Capital cases," as defined in Mississippi Code Annotated section 1-3-4 (Rev. 2005), are "criminal cases, offenses, and crimes punishable by death or imprisonment for life in the state penitentiary." Mississippi Code Annotated section 97-3-79 (Rev. 2012), in turn, provides:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, *shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years*.

(Emphasis added). Thus, the crime of armed robbery does carry the possibility of a life sentence "if the penalty is so fixed by the jury."

¶9. By agreeing not to pass sentencing to the jury, the State never sought a life sentence for Horton. Since Horton's trial, the Mississippi Supreme Court, in *Bester v. State*, 188 So. 3d 526, 529-30 (¶¶9-12) (Miss. 2016), upheld a trial court's sentence of life imprisonment for forcible rape absent a jury recommendation, as the applicable statute allowed the court to fix a penalty "for any term." This Court has applied *Bester* to affirm a trial judge's

5

sentencing of a defendant convicted of armed robbery to a term of life absent a jury's recommendation, as section 97-3-79 contains similar language allowing the trial court to "fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years." *See Young v. State*, 2016-CP-00542-COA, 2017 WL 4386676, at **2-4 (¶¶7-9) (Oct. 31, 2017). It is evident from the record, however, that the trial judge, in this case, never contemplated the possibility of imposing a life sentence. As the trial judge noted, Rule 10.01 provided in part: "In felony cases not involving the *possible sentence* of death or life imprisonment, the defendant and the prosecution shall have six (6) peremptory challenges for the selection of the twelve regular jurors. These challenges may not be used in the selection of an alternate juror or jurors."[2] (Emphasis added).

¶10.    Therefore, we rely on the controlling language of Rule 10.01 in our determination of this issue. Since there was no possibility that Horton would be sentenced to life imprisonment by a jury, and *Bester* (and its progeny) had not yet raised the possibility that the trial court could impose such a sentence, we find the trial court's ruling that Horton was only entitled to six peremptory challenges was not an abuse of discretion.

II.    **Whether the trial court erred in enhancing Horton's sentence under section 97-37-37(1).**

¶11.    The trial court ordered Horton to serve a separate five-year consecutive sentence

---

[2] To the extent that Rule 10.01 (now Mississippi Rules of Criminal Procedure Rule 18.3(c)(1)(A)(i-ii)) might be read as narrowing the provisions of section 99-17-3, the rule controls over the statute regarding matters of judicial procedure. *See State v. Delaney*, 52 So. 3d 348, 351 (¶11) (Miss. 2011) ("[W]hen a statute conflicts with this Court's rules regarding matters of judicial procedure, our rules control.").

under the firearm-enhancement statute, section 97-37-37(1).[3] Because the jury was not instructed to find he "used or displayed" a firearm during the commission of a felony, Horton contends that the trial court erred in imposing the enhanced sentence.

¶12. However, Jury Instruction S-2 instructed the jury that it should find Horton guilty of armed robbery if he willfully, unlawfully, and feloniously took money from Cross "by violence to her person or putting [] Cross in fear of immediate injury to her *person by the exhibition of a deadly weapon, to wit: a handgun*." (Emphasis added). Thus, the jury instruction's language clearly stated that in order to convict Horton of armed robbery, the jury had to find, among other things, that he exhibited a deadly weapon. Section 97-37-37(1) likewise requires that Horton use or display a firearm during the commission of any felony before receiving the statutorily enhanced penalty. As the jury found beyond a reasonable doubt that Horton used a "deadly weapon, to-wit; a handgun," during the robbery of Cross, this finding satisfies the essential elements of section 97-37-37(1). *See Johnson v. State*, 44 So. 3d 365, 367 (¶9) (Miss. 2010) (finding the jury decided each element of the enhanced-penalty statute when it found Laharrison Johnson guilty of armed robbery by use of a firearm, and section 97-37-37(1) required a determination of no additional factor not already decided by the jury).

---

[3] Section 97-37-37(1) provides:

> Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.

¶13. Horton also claims that sentencing him under section 97-37-37(1) subjected him to double jeopardy. However, our Court has previously rejected this argument, finding "that sentence-enhancement statutes under which additional terms of imprisonment are imposed do not trigger double-jeopardy violations." *Lewis v. State*, 112 So. 3d 1092, 1097 (¶15) (Miss. Ct. App. 2013). The statute "merely imposes an elevated sentence for use or display of a firearm during the commission of a felony, and it does not delineate an independent substantive offense." *Id*. Our supreme court has further concluded: "The Legislature intended for these two punishments to apply to the same offense, therefore there is no double-jeopardy concern." *Taylor v. State*, 137 So. 3d 283, 288 (¶17) (Miss. 2014). We find no merit to Horton's claim.

### III. Whether the trial court erred in admitting evidence of other bad acts.

¶14. Horton argues that the trial court erred in allowing the State to present evidence of other bad acts, specifically "an uncharged and unproven carjacking and armed robbery of a Waffle House," and that "the admission of this evidence prejudiced his substantial right to a fair trial," violating Mississippi Rules of Evidence 404(b), 403, and 105. The admission or exclusion of evidence by the trial court is reviewed for abuse of discretion. *Thompson v. State*, 157 So. 3d 844, 851 (¶20) (Miss. Ct. App. 2015). We will reverse the court's decision "only if such discretion has been abused and a substantial right of a party has been affected." *Id*.

¶15. On October 5, 2015, Horton filed a motion requesting a redaction of a portion of his written statement to police, in which he stated he robbed a Waffle House and committed an

armed carjacking of someone driving a maroon Impala. At a pretrial-motions hearing, defense counsel argued that this portion of Horton's statement was "prejudicial, and . . . not probative to any proof in the State's case in chief in these two cases." But defense counsel did acknowledge that the incidents were "in close proximity." The motion was held in abeyance.

¶16. At trial, the State moved for the admission of Horton's statements to police, arguing the crimes "constitute[d] a single transaction or occurrence," and it would "have a difficult time telling a rational and coherent story of the events of the night without being able to explain that the car was used in the commission of this crime." After reviewing Horton's video statement, the trial judge allowed the State to introduce the video into evidence, finding:

> On [the video,] the defendant discusses two armed robberies; one at the Popeyes and another at the Waffle House which occurred very close in time – on the same date apparently – and were clearly part of a common scheme or transaction, and thus will be admissible under Mississippi Rule of Evidence 404(b). . . . [R]edacting statements about the Waffle House robbery from the audio/videotape would no doubt be confusing to the jurors in this matter, and leave the audio/videotape in a disjointed and incoherent state.

However, the trial court did not allow Horton's written statement, as no evidence had linked the armed carjacking to the robberies. The court did state it would revisit the issue if such evidence was introduced.

¶17. After defense counsel referenced the carjacking during her opening statement, the State objected, arguing the reference opened the door to testimony about the carjacking from Detective Williams. The trial court sustained the objection, but did not rule on the

admissibility of Horton's written statement. However, after Anderson testified that she saw a "dark red car" pull up next to the Popeyes and saw a man dressed all in black get out of the car with a gun, the State again moved to admit Horton's written statement and testimony by Detective Williams. The trial judge determined at that point that the reference in opening statements by defense counsel, coupled with Anderson's testimony, rendered evidence as to the armed carjacking "fair game consistent with [his] ruling as it concerns 404(b) evidence." Noting that "[w]ithout that evidence I believe it would be confusing to the jury," the trial judge allowed Horton's written statement to be admitted into evidence.

### A. Rule 404(b)

¶18. Horton contends that the evidence of the stolen maroon Impala and the robbery of the Waffle House "was not necessary for the State to prove that the Popeyes and/or Burger King was robbed." Horton also claims the State's use of this evidence was a "tactical scheme" to prejudice his defense.

¶19. Rule 404(b)(1-2) provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . [However, t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The State asserts that since the robberies of the Popeyes and Waffle House occurred on the same evening within a short time of one another, the evidence was admissible "to show Horton's plan and motive in committing a string of armed robberies." In his video statement to the detectives, Horton confessed that he and two other men robbed the Popeyes, then

10

proceeded to the Waffle House to commit another robbery. "Proof of another crime or act is allowed when it is so interrelated to the charged crime that it constitutes either a single transaction or occurrence or a closely related series of transactions or occurrences." *Price v. State*, 898 So. 2d 641, 653 (¶30) (Miss. 2005) (citing *Brown v. State,* 890 So. 2d 901, 912 (¶32) (Miss. 2004)). "[T]he State has a legitimate interest in telling a rational and coherent story of what happened . . .[, and w]here substantially necessary to present to the jury the complete story of the crime, evidence or testimony may be given even though it may reveal or suggest other crimes." *Davis v. State*, 40 So. 3d 525, 530 (¶18) (Miss. 2010) (quoting *Brown v State*, 483 So. 2d 328, 330 (Miss. 1986)).

¶20.    We also agree with the State's argument that the evidence was relevant to prove Horton's identity. Anderson, a Popeyes's employee, testified that she saw men pull up next to the restaurant in a "dark red" car and a man step out with a gun. Accordingly, we find no abuse of discretion in the trial judge's determination that it was necessary for the jury to hear Horton's statements because that evidence told the entire story of what transpired that evening and corroborated Anderson's testimony about the "dark red" car.

        B.      Rule 403

¶21.    Horton claims that the trial court erred in admitting the evidence "because the probative value of this evidence, if any, was substantially outweighed by the danger of unfair prejudice and confusion of the issues" under Rule 403.[4] If evidence is admissible under Rule

---

[4] Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

404(b), "it still must pass through Rule 403, which is the 'ultimate filter through which all otherwise admissible evidence must pass.'" *Stone*, 94 So. 3d at 1089 (¶34) (quoting *McKee v. State*, 791 So. 2d 804, 810 (¶22) (Miss. 2001)).

¶22.    Admittedly, the trial judge did not conduct an on-the-record balancing test under Rule 403.  However, "a circuit court's failure to state Rule 403's 'magic words' does not mean that the court did not consider Rule 403's requirements or that the court erred in its decision on admissibility." *Corser v. State*, 147 So. 3d 357, 360 (¶14) (Miss. Ct. App. 2013) (citing *Tate v. State,* 20 So. 3d 623, 639 (¶40) (Miss. 2009)).  In *Jones v. State*, 920 So. 2d 465, 476 (¶34) (Miss. 2006), the supreme court explained:

> [W]hile we clearly interpret the rules of evidence as requiring that all otherwise admissible evidence be "filtered" through the balancing test set forth in Rule 403, we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal.  Though this Court certainly expects trial judges to have considered Rule 403 in making their evidentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words. . . . It follows that our review depends on the evidence and not the judge, and while a judge's on-the-record analysis is recommended as it serves to fortify the judge's position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.

As the State argues, the record shows that the trial judge thoroughly considered the implications of admitting or excluding this evidence, hearing lengthy arguments from both the defense and the State, and even initially excluding the written statement from evidence until defense counsel's reference to the carjacking and Anderson's testimony about the car. In any event, any error in admitting the evidence regarding the carjacking and Waffle House was harmless.  Horton confessed in both statements to robbing the Popeyes.  Therefore, we

find the trial court's admission of evidence of Horton's statements regarding the carjacking and Waffle House was not an abuse of discretion, as the evidence's probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

### C. Rule 105

¶23. As amended on July 1, 2015, Rule 105 states:

> If the court admits evidence that is admissible against a party or for a purpose – but not against another party or for another purpose – the court, unless expressly waived or rebutted, shall restrict the evidence to its proper scope, contemporaneously instruct the jury accordingly, and give a written instruction if requested.

Horton asserts that the trial court should have restricted evidence of the carjacking and Waffle House robbery "to its proper purpose." While Horton acknowledges that he did not request the court to give a limiting instruction, he claims that he did not "expressly waive[] the requirement that the trial court contemporaneously instruct the jury as to the proper purpose of the other bad acts evidence."

¶24. We find no merit to this claim. This Court has held that "even as amended, Rule 105 only requires the judge to offer a limiting instruction, which the defendant is free to 'waive.'" *Curry v. State*, 202 So. 3d 294, 299 (¶16) (Miss. Ct. App. 2016) (citing M.R.E. 105). In fact, "the defendant may not want such an instruction because it may actually 'focus the jury's attention' on the potentially prejudicial testimony." *Id.* (quoting *Tate v. State*, 912 So. 2d 919, 928 (¶28) (Miss. 2005)). We concluded in *Curry*:

> [Jemarcus] Curry's claim on appeal that he was prejudiced because such an instruction was not given is highly speculative. Curry's attorney presumably

knew that such an instruction was available upon request, but he did not ask for it. Under the circumstances, we cannot say that the absence of a limiting instruction deprived Curry of a fair trial. *See Robinson v. State*, 940 So. 2d 235, 239 (¶11) (Miss. 2006) (holding that the erroneous denial of a limiting instruction is harmless error unless it deprives the defendant of a fair trial).

*Id*. Likewise, Horton's attorney did not request a limiting instruction, and we find the absence of any limiting instruction by the court did not deprive Horton of a fair trial.

¶25. Accordingly, we affirm Horton's conviction and sentence.

¶26. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**