# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00811-COA

**KEVIN LADEXTER CARTER A/K/A "DECK"**          **APPELLANT**
**A/K/A KEVIN CARTER**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/09/2018 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/01/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Kevin Ladexter Carter was convicted of second degree murder, aggravated assault, and felon in possession of a firearm in the circuit court of Winston County, Mississippi. Carter was sentenced to serve forty years on the second-degree murder charge, twenty years on the aggravated-assault charge, and ten years on the firearm charge, with the sentences running consecutively. Carter appeals, claiming error in the admission of prior incidents of domestic violence between him and the deceased. Finding no error, we affirm the convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2. Angela Collier and Delisa Joyce Aills were co-workers, friends, and roommates who lived in a trailer next door to Collier's grandmother. Collier (age 40) and Carter had an on-again-off-again relationship since they were teenagers. But the relationship had grown increasingly abusive, culminating in Carter's shooting and killing Collier on February 12, 2017.

¶3. On that evening, Aills was woken by a scream. Collier and Carter were arguing in the bathroom and, grabbing a pocket knife she kept on her TV, Aills ran to Collier's call for help.[1] She found Collier on the floor of the bathroom and Carter with a rifle. Aills attempted to stab Carter with her knife so she could get Collier out. Aills said Carter hit her in the shoulder with the stock of the gun. He then hit her in the face and stomped and kicked her when she fell to the floor, causing her severe facial injuries.[2] When Collier tried to intervene, Carter started beating her as well. Aills managed to get out of the trailer, and she ran next door for help.

¶4. Johnny Shumaker, Collier's uncle, who lived with his mother in a trailer on the same property, came to Aills's aid.[3] He said he thought he heard thunder and "a 'pow' like lightning." He saw Aills come staggering across the yard, bleeding from her eyes. She told

---

[1] Aills testified that she and Collier kept no weapons on the premises other than Aills's pocket knife. Collier's uncle, Johnny Shumaker, also testified that Collier feared guns and would not even take one that was offered to her to protect herself.

[2] Carter's beating crushed Aills's eye sockets and sinus cavities.

[3] Aills and Shumaker dated at one point in time.

2

Shumaker that Carter had shot Collier and Shumaker called the police.[4]  Shumaker and Aills returned to the trailer to find Collier in the bedroom, bleeding heavily from a gunshot wound to her leg and unable to communicate.  Carter had left the scene.  Emergency personnel arrived and transported Collier to the hospital where she died from the gunshot wound.

¶5.     Both Aills and Shumaker testified about prior domestic-violence incidents they had witnessed between Carter and Collier.  A month earlier, on New Year's Eve, Collier had run into Aills's bedroom for help.  Carter followed her with a .40 caliber gun, which he had cocked.  Aills lay on top of Collier to protect her.  Shumaker, who was also present, heard Carter threaten Collier, saying he was going to "bust [her] [expletive] head."  Carter also said that he would kill Collier and it was only Aills's and Shumaker's presence that saved her "this time."  Shumaker was able to get Carter out of the bedroom and Collier filed domestic abuse charges against Carter in justice court.[5]

¶6.     On another occasion, Shumaker said that Collier ran to his house screaming that Carter was "jumping on her."  Shumaker saw Carter, who was drunk, pursuing Collier with a two-by-four.  Carter told Collier that he was "fixing to bust [her] [expletive] head."  Carter then said he "knew how to get her" and he doused Collier's car with gasoline.  He was prepared to set it on fire, but he ran when Collier called the police.

¶7.     Shumaker testified to another incident the summer before, when Shumaker showed

---

[4] Aills testified that she did not hear a gunshot and Collier had not been shot when she left the trailer to seek help.  However, she admitted that at the time her head was ringing from her injuries.

[5] The State had Collier's affidavit on this incident from justice court but it decided not to introduce it at trial.

Carter a photo on his phone. Collier believed it was a picture of a woman, and she and Carter began arguing. Collier ran into the trailer, and Carter barred the back door. He then went in the front door, and Shumaker could see and hear them fighting. Shumaker also testified about another incident that occurred on Mother's Day of 2016, when Collier hugged cousins visiting from Nebraska. Carter became enraged and slapped Collier. Shumaker saw her the next day, and she had noticeable bruises on her head.

¶8. Shumaker also testified that he had helped Collier change the locks on the trailer three times to keep Carter out. They placed double locks on the water-heater closet because Carter had come in that way as well. They also nailed windows shut.

¶9. After the shooting, but before Carter was apprehended, Carter called Shumaker three times. At first Carter denied shooting Collier, but in the third call, he admitted he did it but that he not mean to kill her. Moreover, while being transported to the courthouse, the driver overheard Carter telling other inmates that he did not deliberately kill Collier—that "it was an accident."

¶10. A grand jury of Winston County, Mississippi, indicted Carter for the murder of Collier and the assault on Aills. They also charged him with felony possession of a firearm under Mississippi Code Annotated section 97-37-5(1) (Rev. 2014) because Carter had been previously convicted of commercial burglary in 1999.

¶11. Prior to trial, Carter moved to exclude testimony about other acts of violence against Collier. The court heard the testimony, excluded an incident that Shumaker had not personally witnessed, but admitted the testimony referred to above.

¶12.    At trial, Aills and Shumaker testified about the events on the night Collier was killed and about the other incidents of domestic abuse. The medical examiner testified that Collier had extensive bruising all over her body, including broken ribs on both sides, as well as the gunshot wound from which she died. Law enforcement officers (including the transport driver) testified about their investigation and Carter's statements.

¶13.    Carter testified as well. He admitted that he and Collier were arguing in the bathroom when Aills came in and tried to stab him with her knife. He said he hit Aills and Collier tried to stop him. Carter then hit Collier while he tried to tell her that Aills had a knife. He said Collier then tried to get the knife from Aills but that Aills then got free and came after Carter again. Carter said he took the toilet seat and hit Aills in the face. He said that Collier intervened again and that he hit her with the toilet seat as well. Collier managed to push him out of the bathroom, and Carter said he reached by the washer for a rifle that he had brought to the trailer a few weeks earlier. Carter stated that he came back in the bathroom to try to get Aills to put the knife down. Collier, who was toweling off Aills's bleeding face, saw the rifle and grabbed it from him. Carter hit Collier in the face to get her to release it. Carter said Aills got up and joined in the struggle for the gun when it accidentally went off in the bathroom, injuring Collier in the leg. Carter testified that he told Aills to call 911, but she had no minutes on her phone. At this point, Carter said that Aills told him to leave while she got help. So he left. Regarding Aills's and Shumaker's testimony of other acts of violence, Carter said they were either lies or exaggerations. But he admitted that he and Collier had a violent past and that she had pressed charges against him. He had no explanation for the

extent of Collier's injuries that the medical examiner had found.

¶14. The jury found Carter guilty of second-degree murder, aggravated assault, and possession of a firearm by a felon. The court sentenced him on all three counts and denied Carter's motion for a new trial. Carter appeals, claiming that the court erred in admitting testimony of prior bad acts.

## STANDARD OF REVIEW

¶15. This court reviews a trial court's ruling on the admissibility of evidence only upon a showing of abuse of discretion. *Lewis v. State*, 198 So. 3d 431, 433 (¶7) (Miss. Ct. App. 2016). The trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence, and this Court will not reverse the trial court's ruling unless the judge abuses this discretion so as to be prejudicial to the accused." *Id*. at 433-34 (¶7) (internal quotation marks omitted) (quoting *Shaw v. State*, 915 So. 2d 442, 445 (¶8) (Miss. 2005)).

## DISCUSSION

¶16. Carter contends that the court erred in allowing Shumaker and Aills to testify about the prior incidents of domestic violence between Carter and Collier and, specifically, that the court failed to conduct the balancing test required in Mississippi Rule of Evidence 403 on the record before allowing such testimony. We do not agree.

¶17. In general, evidence of a defendant's prior bad acts is not admissible under Rule 404 of the Mississippi Rules of Evidence if entered to prove that the defendant acted in accordance with his character. The rule specifically states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on

6

a particular occasion the person acted in accordance with the character." M.R.E. 404(b)(1). But the rule does allow such evidence to be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." M.R.E. 404(b)(2). In addition, proof of other acts may be necessary for the State to present a rational and coherent story about what happened even if it may reveal or suggest other crimes. *Jones v. State*, 920 So. 2d 465, 474 (¶29) (Miss. 2006).

¶18. Although evidence is permissible under Rule 404(b)(2), it may still be excluded if its probative value is outweighed by unfair prejudice and other specific reasons identified in Mississippi Rule of Evidence 403: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In *Pitchford v. State*, 45 So. 3d 216, 246 (¶155) (Miss. 2010), the Mississippi Supreme Court held that the Rule 404(b) exceptions are subject to a Rule 403 balancing test.

¶19. Carter does not argue that his prior abuse of Collier is not a proper Rule 404(b)(2) exception. We indicated as much in *Marbra v. State*, 904 So. 2d 1169, 1175 (¶23) (Miss. Ct. App. 2004), where we held that evidence of a ten-year pattern of domestic violence against the murder victim was admissible to show it was not an accident but a common scheme of physical violence. Here, Carter testified that the shooting was an accident and said the same to Shumaker and the transport driver. Therefore, the State argues, and Carter does not dispute, that testimony of Carter's prior abusive acts fell under Rule 404(b)(2)'s list of

permissible uses.

¶20.    But Carter takes issue with the court's failure to say in its ruling on the record that it had performed the Rule 403 balancing test—i.e., that it had weighed the probative value of this testimony against the prejudicial impact on Carter's defense.  While the court did not specifically say that it had, the record shows that Carter's counsel argued to the court the prejudicial impact of this testimony to Carter's defense.  In response, the State argued that the prior domestic-violence testimony was not offered to show Carter was acting according to his character, but to show his motive and intent and that this shooting was not an accident. The State provided the Court with the *Marbra* opinion as well as *Moss v. State*, 727 So. 2d 720 (Miss. Ct. App. 1998).  In *Moss*, where the defendant shot and killed his wife, the court admitted testimony from three witnesses about Moss's threats that he was "going to kill that b----" as well as the victim's statements to others prior to her death that Moss had beaten and abused her.  *Moss*, 727 So. 2d at 724 (¶¶15-17).  We affirmed the court's actions, saying that the evidence was not introduced to prove Moss's character, but "to show the escalating level of violence, culminating in the crime of murder."  *Id*. at 725 (¶19).  Both cases also discuss the need for the trial court to consider the Rule 403 balancing test before admitting the testimony.  Although the court here did not specifically mention Rule 403, the record shows that the court reviewed both cases and arguments of counsel prior to making its ruling.

¶21.    Carter makes the same argument attempted by the defendant in *Jones*.  There, the trial-level court allowed testimony about the defendant's prior assault on the murder victim. Jones argued, among other things, that the court had failed to perform an on-the-record Rule 403

8

analysis, and because of this the court had improperly admitted the evidence. The supreme court disagreed and found no error by the trial court. After noting the broad discretion given to our trial courts in evidentiary determinations, the Court said that the Rule 403 balancing task "is not one susceptible of mechanical performance as it asks only that a judge rely on his/her own sound judgment." *Jones*, 920 So. 2d at 476 (¶33). The Court specifically addressed Jones's argument, saying:

> In asserting that his due process rights were violated when the trial court judge failed to perform an on-the-record Rule 403 balancing test, Jones has misapprehended the nature of our rules of evidence and the discretion afforded to trial judges when applying these rules. . . . [W]e do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal. Though this Court certainly expects trial judges to have considered Rule 403 in making their evidentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words. . . . [W]hile a judge's on-the-record analysis is recommended as it serves to fortify the judge's position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial. The judge's failure to perform an on-the-record Rule 403 analysis in no way affected Jones's rights. . . . We, therefore, find this issue to be without merit.

*Id*. at (¶34).

¶22.    In *Brink v. State*, 888 So. 2d 437, 451 (¶42) (Miss. Ct. App. 2004), the defendant similarly argued that the trial court had abused its discretion by failing to conduct an on-the-record balancing of the probative value and the prejudice of photographic evidence. The trial court there, like Carter's court here, heard argument and ruled. We held there, as we do now, that the trial court's failure to articulate the balancing on the record did not require reversal. *Id*. (citing *Hodge v. State*, 801 So. 2d 762, 772 (¶32) (Miss. Ct. App. 2001)). Most recently, we applied the same reasoning in *Horton v. State*, 253 So. 3d 334 (Miss. Ct. App. 2018).

9

There the defendant challenged the admission of an uncharged and unproven carjacking and robbery where the perpetrator wore the same colored mask and drove the same colored car as Horton. *Id*. at 339 (¶14). We acknowledged that the trial court did not conduct an on-the-record balancing test but "a circuit court's failure to state Rule 403's 'magic words' does not mean that the court did not consider 403's requirement or that the court erred in its decision on admissibility." *Id*. at 341 (¶22).

¶23. Applying the above precedent to this case, we find no error in the court's failure to conduct an on-the-record balancing test. The evidence was not "patently prejudicial" and we find that the circuit court did not abuse its discretion in the admission of Carter's prior acts of domestic violence against the victim.

## CONCLUSION

¶24. Finding no merit to his claims of error by the trial court, we affirm Carter's convictions and sentences.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

10