# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01184-COA

JORDAN COLLINS A/K/A JORDAN ALEXANDER COLLINS                    APPELLANT

v.

STATE OF MISSISSIPPI                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/26/2022 |
| TRIAL JUDGE: | HON. M. BRADLEY MILLS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DARLA Y. MANNERY-PALMER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/04/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND McDONALD, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Jordan Collins was convicted in the Madison County Circuit Court for kidnapping, armed robbery, armed carjacking, aggravated assault, conspiracy to commit kidnapping, and conspiracy to commit armed robbery for the home invasion of Mike Marley.  On appeal, Collins claims the trial court abused its discretion by (1) admitting evidence of crimes committed in Hinds County; (2) not admitting evidence of the assault on Collins by two witnesses in jail; and (3) refusing to instruct the jury on the lesser offenses of accessory after the fact to kidnapping and accessory after the fact to armed robbery.  Finding that the trial court did not abuse its discretion, we affirm.

# FACTS AND PROCEDURAL HISTORY

## Procedural History

¶2.     Collins was indicted in Madison County for six counts: (1) kidnapping; (2) armed robbery; (3) armed carjacking; (4) aggravated assault; (5) conspiracy to commit kidnapping; and (6) conspiracy to commit armed robbery.  Collins had five co-defendants in this case: Deborah Cameron, Samuel Young, David Bradford Mitchell, Kneefe Miller, and Desmond Jones.  Collins' five co-defendants pled guilty in their respective cases.

¶3.     The State filed a notice under Mississippi Rule of Evidence 404(b) that it intended to introduce evidence of Collins' other crimes and acts arising out of the robbery of Marley's parents in Hinds County.  Collins filed a motion to exclude any testimony or evidence from the Hinds County case.  A hearing was held on the matter, and the trial court analyzed the evidence under both Rules 404(b) and 403.  The trial court stated:

> I believe they're so interconnected by time and other factors such as the fact that this is all one family that got hit back-to-back within an hour, the preparation started at least back in May, based on what's in the indictment and what Mr. Hutto had to say, that it's all, appears at least to be on its face, one continuous transaction and series of events that were not separated by a large amount of time or with different people involved.  In fact, it was one family and it happened as fast as it did and they're all intertwined where you've got codefendants in both cases in Hinds and Madison.  I just don't see a way you can separate that and still tell the complete story of what went on.
>
> So I believe that the probative value is greater than any prejudice that would be created and it's relevant to show plan, preparation and identity.

The trial court ruled that a limiting instruction would be provided to the jury to not consider the Hinds County evidence as evidence of guilt in the Madison County case.

2

¶4. The Madison County Circuit Court jury found Collins guilty of all counts. He was sentenced to serve in the custody of the Mississippi Department of Corrections for the following terms: thirty years for Count I; thirty years for Count II; thirty years for Count III; twenty years for Count IV; five years for Count V; and five years for Count VI. Counts I, II, and III were ordered to run concurrently with each other. Counts IV, V, and VI were ordered to run concurrently with each other and consecutively to the sentences imposed in Counts I, II, and III. Collins filed a Motion for New Trial or in the Alternative Judgment Notwithstanding the Verdict which was denied. Collins timely appealed.

**Factual Background**

¶5. Mike Marley lived on Berkshire Drive in Ridgeland, Mississippi with Deborah Cameron, his ex-girlfriend, and Cameron's granddaughter. While Marley and Cameron were no longer in a relationship at the time of the incident, they lived together because of the child. During that time, Cameron was in a relationship with Samuel Young, who was incarcerated.

¶6. In 2019, a package arrived at Marley's home that was addressed to "Sam Young" and contained a single mobile phone. Cameron falsely claimed Young was her cousin and hid the true nature of the relationship from Marley. Over the year, additional packages containing phones arrived at Marley's residence. Marley started receiving threatening text messages from unknown numbers demanding money from him. One day Marley's bank accounts were hacked, and the hacker attempted to wire money to Young. Also, a life

3

insurance policy worth $75,000 was taken out on Marley with Young listed as the beneficiary.

¶7.    In June 2020, two masked men came through Marley's door armed with guns. Marley was downstairs at the time while Cameron and her grandchild were upstairs. The armed men demanded money and Marley's car keys. During the home invasion, the men mentioned the address of Marley's elderly parents. Marley's parents, John and Martha Marley, ages 87 and 86 respectively, lived on Saint Andrews Drive in Jackson in Hinds County. Marley complied with the men's orders and gave them the keys to his car. The men forced Marley into the car with them.

¶8.    The men drove off with Marley but turned back to the house after Marley mentioned he had cash inside the home. The armed men reentered the house and stole $3,000 before leaving again. At this point, Marley escaped out of the back door of the vehicle. One of the men chased after him and hit him in the head with a gun. Marley screamed, which caused one of his neighbors to step outside and witness the events. The armed gunmen got back into Marley's car and fled the scene.

¶9.    Later that evening while Marley was talking with police, he received a call from his mother that his parents had been robbed at their home in Jackson by two masked gunmen. The men zip-tied John and Martha Marley and stole their car, money, and jewelry worth over $500,000. After the event, the Marleys began receiving phone calls from Young in prison.[1]

---

[1]  The record indicates the entire "Marley family" received phone calls and texts.

Police investigated Young's prison cell and discovered a mobile phone with information about the crimes against the Marleys.

¶10. Police extracted data from Young's mobile phone and discovered that Young had sent text messages to David Bradford Mitchell that included a picture of Marley's driver's license with his home address and his parent's address. Young and Mitchell discussed a "million dollar lick" and that they could get rich by robbing the Marleys. Young warned Mitchell that the license plate on one vehicle (a truck) "links back to [Cameron's] mom." Police later learned that Cameron and her mother had rented a 2020 Chevy Traverse before the crimes. Video surveillance footage at the Hilton Hotel on County Line Road captured Cameron dropping off the rented Traverse to a man who arrived in a gray Hyundai Sonata. Police learned that Collins owned the Sonata and that he had driven to the Hilton with Kneefe Miller.[2]

¶11. At trial, co-defendants Kneefe Miller and Desmond Jones testified against Collins. Miller testified that Collins was living with him around the time leading up to the crime. Miller and Collins were contacted by Mitchell about robbing the Marleys. Miller was provided the addresses and was told to pick up the rented 2020 Traverse from Cameron. Miller confirmed that Collins drove him to the Hilton Hotel in Collins' Sonata to meet Cameron and to pick up the Traverse. Miller testified that he and Collins drove the Traverse to scope out Marley's home and his parents' home.

---

[2] Miller was being monitored by the MDOC via an ankle monitor.

¶12. Miller testified that on the day of the robbery, he and Collins met with Jones and prepared for the night ahead. Jones drove the Traverse ahead of Miller to check on Marley's house while Miller and Collins rode to the house together in a separate vehicle. Miller and Collins were dropped off near Marley's home. The two tried to open Marley's front door, but it was locked. They tried the back door, and it was also locked. Collins called Mitchell, who called Young, who called Cameron. Miller testified that Cameron unlocked the door after Young contacted her. Then, Miller and Collins entered the home and pulled their guns on Marley. Miller testified that Collins was the one who threatened Marley and demanded money and his car.

¶13. After Miller and Collins returned to the house and stole Marley's cash, Marley made his escape, and the two drove off in a panic. Miller testified that they met up with Jones and dumped Marley's car. From there, Jones drove Miller and Collins in the Traverse to Saint Andrews Road and Marley's parents' home. Miller testified that he and Collins entered the home. Miller zip-tied Marley's parents while Collins searched for valuables. The two left Saint Andrews Road with the Marleys' jewelry, credit cards, and car.

¶14. Jones testified that he met Miller and Collins on the day of the robbery. He testified that Miller brought the Traverse to him, which Jones drove that night. Jones testified that Collins called him to pick up him (Collins) and Miller. Jones testified that he picked them up and dropped them off at another house.

¶15. The State called Ryan Luckett as a witness. Luckett was with Collins, Miller, and

Jones prior to the robbery. Luckett testified he saw them arrive at the gas station driving the Traverse. Later that night, Collins called Luckett and asked to be picked up at Collins' grandmother's house. When Luckett arrived he saw Collins, Miller, and Jones at the house. Luckett testified that he saw that they were wearing latex gloves and carried guns. The next day, Luckett ran into Collins on State Street in Jackson. Luckett testified that Collins showed him a news article describing the Marleys' robbery the night before, that Collins said that he committed that crime, and that he "hit the dude across the head with a gun." Collins described that man (Marley) as "old and brittle" and bragged about a gold necklace with a diamond that he had stolen.

¶16. The State called Michael Fegely as an expert witness in geolocation and historical cell tower mapping. Fegely testified that Miller's ankle monitor and cell phone records placed him at both crime scenes. The State also offered evidence that the Traverse's license plate was captured traveling in and out of Jackson and Ridgeland around the time of the crimes.

¶17. The morning after Miller, Jones, and Luckett testified, counsel for Collins informed the trial court that Miller and Luckett had assaulted Collins in jail and told him, "You better not say shit and ride this shit out or we're going to kick your ass, kill your ass." Collins' counsel requested that the court allow the assault and threats to be presented to the jury. The State objected, arguing that the incident was irrelevant to Collins' case. The trial court agreed, finding that Collins had no significant injury that the jury would notice, and the fact he was assaulted in jail was irrelevant to the case.

¶18. Collins elected to testify in his defense. Collins testified that he was offered $50 to drop someone off at the Hilton hotel. He testified that he drove a gray Hyundai Sonata and confirmed that he drove Miller to the Hilton to pick up a Chevy Traverse. Collins testified that he kept the Traverse and had several telephone calls with Jones and Miller, but that they never discussed any robbery or kidnapping. Then, he received a call from Jones to drive to Ridgeland to meet them. Collins testified that when he arrived, Jones and Miller were wearing all black attire, and that Miller was wearing a mask. Collins stated that he knew "something wasn't right about that situation" based on their outfits in the summer time, but that he drove Jones and Miller around Ridgeland, following their directions.

¶19. Collins testified that he dropped Jones and Miller off somewhere between Jackson and Ridgeland. Collins said he drove off but said he got another call from Jones that lasted for over 37 minutes. According to Collins, Jones was unaware that the call had been made, and it sounded like Jones' phone was in his pocket. Collins testified that he listened to the call and heard the sound of Jones "kicking down a door" as well as screaming and yelling at two individuals. Collins testified that he hung up the phone after he heard someone say "give me the keys." Collins then got another call from Jones asking to be picked up in Jackson around a Church's Chicken. Collins testified that he picked up Jones and Miller, who was standing next to a white Mercedes, and that they had bags full of cash, phones, credit cards, and jewelry. Collins dropped the two off and got a ride home from a different person. Collins denied being involved in the crime and testified that he did not even know it was happening.

8

¶20. During the jury instruction conference, Collins requested that the jury be instructed on the lesser-related crimes of accessory after the fact to armed robbery and accessory after the fact to kidnapping. The State objected, arguing that Collins was not charged with accessory after the fact and that he is not entitled to the instruction. The trial court sustained the objection, stating the defendants were not entitled to instructions on lesser-related offenses.

## STANDARD OF REVIEW

¶21. The standard of review for the admission or exclusion of evidence is abuse of discretion. *Carter v. State*, 337 So. 3d 236, 242 (¶14) (Miss. Ct. App. 2021) (citing *Smith v. State*, 986 So. 2d 290, 295 (¶12) (Miss. 2008)). We also review rulings on jury instructions under an abuse-of-discretion standard. *Roby v. State*, 183 So. 3d 857, 872 (¶63) (Miss. 2016).

## DISCUSSION

### (1) Hinds County Evidence

¶22. Collins claims the trial court erred by allowing the State to present extensive evidence of acts and other crimes that occurred in Hinds County. Collins claims this evidence tainted the jury and prejudiced his defense, and that the limiting instruction provided by the judge was insufficient to remedy the prejudice.

¶23. Rule 404(b)(1)-(2) states:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in

accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

MRE 404(b)(1)-(2). Also, "[p]roof of another crime or act is allowed when it is so interrelated to the charged crime that it constitutes either a single transaction or occurrence or a closely related series of transactions or occurrences." *Horton v. State*, 253 So. 3d 334, 341 (¶19) (Miss. Ct. App. 2018) (quoting *Price v. State*, 898 So. 2d 641, 653 (¶30) (Miss. 2005)). "The State has a legitimate interest in telling a rational and coherent story of what happened, and where substantially necessary to present to the jury the complete story of the crime, evidence or testimony may be given even though it may reveal or suggest other crimes." *Id.* (quoting *Davis v. State*, 40 So. 3d 525, 530 (¶18) (Miss. 2010)).

¶24. The trial court found that the evidence relating to the Hinds County crime was admissible to show plan, preparation, and identity. The record supports the judge's finding. Collins robbed Mike Marley around 9:37 p.m. in Ridgeland. When Collins and Miller entered Marley's home, they provided Marley the address of his parents' home. Then, around 10:10 p.m., Collins and Miller robbed John and Martha Marley at their home in Jackson. Miller's testimony described how Collins and the other co-defendants planned to rob both Marley and his parents. Also, Luckett's testimony identifies Collins as an actor in both crimes. The Madison County crime and Hinds County crime were clearly interrelated and either a single transaction or a closely related series of transactions. The ruling that the evidence was admissible under Rule 404(b)(2) to show plan, preparation, and identity was

10

not erroneous.

¶25.    The trial court also found that the evidence was admissible under the Rule 403 analysis.  Rule 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  MRE 403.  "If evidence is admissible under Rule 404(b), it still must pass through Rule 403, which is the ultimate filter through which all otherwise admissible evidence must pass." *Horton*, 253 So. 3d at 341 (¶21) (internal quotation marks omitted).

¶26.    In referring to the two crimes, the trial court stated on the record:

> I believe they're so interconnected by time and other factors such as the fact that this is all one family that got hit back-to-back within an hour, the preparation started at least back in May, based on what's in the indictment and what Mr. Hutto had to say, that it's all, appears at least to be on its face, one continuous transaction and series of events that were not separated by a large amount of time or with different people involved.  In fact, it was one family and it happened as fast as it did and they're all intertwined where you've got codefendants in both cases in Hinds and Madison.  I just don't see a way you can separate that and still tell the complete story of what went on.
>
> So I believe that the probative value is greater than any prejudice that would be created and it's relevant to show plan, preparation and identity.

Collins argues that the events in Madison County were separate from the ones that happened in Hinds County and that the State could have told a complete story without using the Hinds County evidence.  The evidence belies that.  The trial court's finding was supported by the evidence and was not an abuse of discretion.

¶27.    Finally, Collins argues that the limiting instruction the trial court provided was

11

insufficient to prevent prejudice. The trial court instructed the jury as follows:

> The Court instructs the jury that the testimony of any of the State's witnesses regarding alleged acts of the Defendant to allegedly have occurred in Hinds County were offered in an effort to prove motive, opportunity, intent, preparation, plan, knowledge or identity regarding the Defendant. You may give testimony such weight and credibility as you deem proper under the circumstances. However, you cannot and must not consider the testimony in any way regarding whether the Defendant is guilty or not guilty for the crime for which he's presently on trial.

Collins' counsel assisted the court in drafting the instruction, which the court approved, and Collins' counsel did not object to it. On appeal, Collins now argues that the instruction "did not go far enough to remove the opportunity for prejudice against [him]." This Court has previously held that a party who fails to object to a limiting instruction and who also provided the court with the instruction is procedurally barred from claiming error on appeal. *Trest v. State*, 377 So. 3d 981, 987-88 (¶22) (Miss. Ct. App. 2023); *see also Thomas v. State*, 249 So. 3d 331, 347 (¶55) (Miss. 2018) ("It is axiomatic that a defendant cannot complain on appeal of alleged errors invited or induced by himself."). Regardless, the trial court's order properly instructed the jury to consider the evidence only for the limited purposes allowed under Rule 404(b)(2). Collins' argument is without merit.

### (2) Evidence of Collins' Assault

¶28. Collins claims the trial court erred in finding his assault in prison by two witnesses, Miller and Luckett, irrelevant. The assault happened the day after Miller and Luckett testified at trial and the day before Collins testified in his own defense. The two allegedly threatened to beat or kill Collins if he testified. Collins ultimately decided to testify. On

12

appeal, Collins argues the evidence of this assault was relevant because it reflected on the credibility and truthfulness of Miller and Luckett and was aimed at discouraging his testimony.

¶29. Rule 401 states that "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the case." MRE 401. Rule 402 states in part that "[i]rrelevant evidence is not admissible." MRE 402. Here, Collins failed to show how the jail assault was relevant. The Mississippi Supreme Court has previously held that a jail assault against the defendant was not admissible because there was no relevancy connection between the assault and the crime for which the defendant was indicted. *Miller v. State*, 996 So. 2d 752, 756 (¶12) (Miss. 2008). The supreme court explained that "[t]hese were separate incidents, disconnected both temporally and by location." *Id.*

¶30. While the assault was somewhat related to the crime, in the sense that it was perpetrated by at least one co-defendant, Collins has not shown how the assault, which occurred after Miller and Luckett testified, had "any tendency to make a [fact of consequence] any more or less probable than it would be without the evidence." MRE 401. Therefore, the trial court did not abuse its discretion by finding evidence of Collins' assault inadmissible.

### (3) Jury Instructions on Lesser-Related Offenses

¶31. Collins claims the trial court erred by refusing to give his jury instructions which

13

would have allowed the jury to consider the lesser crimes of accessory after the fact to armed robbery and accessory after the fact to kidnapping.

¶32.    Collins' only argument is that this Court should follow the previously overruled precedent of *Griffin v. State* 533 So. 2d 444 (Miss. 1988).  However, the supreme court explicitly overruled *Griffin* and its progeny, finding that "a criminal defendant no longer has the unilateral right under Mississippi law to insist upon an instruction for lesser-related offenses which are not necessarily included in the charged offenses, i.e., so-called lesser-nonincluded-offense instructions." *Hye v. State*, 162 So. 3d 750, 751 (¶2) (Miss. 2015).  The supreme court's decision in *Hye* is precedent for lower courts to follow.  The trial court correctly applied the law by refusing Collins' lesser-related instruction under *Hye*.  Therefore, there was no abuse of discretion.

**CONCLUSION**

¶33.    The trial court did not abuse its discretion by admitting evidence of the Hinds County crime against Collins.  The trial court was also within its discretion in not admitting evidence of the assault on Collins in jail and in refusing Collins' lesser-related-offense jury instructions.  Therefore, we affirm Collins' convictions and sentences.

¶34.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.  McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**